## A00A1069. VAUGHN v. THE STATE.
(543 SE2d 429)

SMITH, Presiding Judge.

Jackie Vaughn appeals his convictions for possession of cocaine with intent to distribute and obstruction of a law enforcement officer. He challenges the trial court's denials of his motion to suppress and his motion to recuse the trial judge. We find no error in the trial court's rulings on these issues, and we affirm.

1. We first address Vaughn's contention that the trial court erroneously denied his motion to suppress. When reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment of the trial court, and we will not disturb the trial court's findings on disputed facts and credibility unless those findings are clearly erroneous. *Dickson v. State*, 241 Ga. App. 575 (527 SE2d 246) (1999). So viewing the evidence presented to the trial court, the record shows that on the night of February 1, 1998, Officers Chris Webster and Brad White of the Lamar County Sheriff's Department patrolled the area of Tenth

---

Street in Barnesville because the sheriff had received complaints about drug activity in the area. Tenth Street is a short, narrow, heavily traveled, dimly lit, dead-end street. When the officers turned onto the street, they saw a small car parked in the middle of the street with its lights off. As the officers drove toward the car, they saw a man walk from an alleyway between two houses and approach the car. From a distance of approximately 200 yards, they saw the man lean against the car, place his arm on the windowsill, and put his right hand inside the car. According to Webster, while the patrol car was traveling slowly down the street, the man "looked up and [saw] the patrol car and immediately stood up, turned around and stuck his hand in his pocket and started walking away."

After stopping the patrol car, White went to speak with the driver of the vehicle, and Webster "confronted" Vaughn, whom he had recognized when Vaughn turned away from the parked car. Webster called out, "Jackie, let me talk to you for a minute." According to Webster, Vaughn did not want to talk to him, "ignored everything [Webster] asked him," kept walking, and asked only, " 'Chris, why are you messing with me?' " Webster told Vaughn to stop and turn around and explain what he had been doing at the car. When Vaughn turned around, he had his hand in his pocket. At least twice, Webster asked Vaughn to remove his hand from his pocket. Each time, Vaughn complied with the order, but only briefly. He would say, "I ain't got nothing in my hand," and put it back in his pocket. It appeared to Webster that Vaughn was putting his hand in his pocket "to gain control of something."

Webster told Vaughn that he was going to pat him down to make sure that he did not have any weapons. He called White over to assist him because Vaughn had demonstrated that he did not wish to cooperate with the order to keep his hands visible. When the officers attempted to frisk Vaughn, he pushed and shoved and fought with them. After a lengthy struggle in which Vaughn was pepper-sprayed twice, Vaughn was subdued and arrested for obstruction. In a search incident to the arrest, Webster found in Vaughn's right pocket a crack pipe and a Newport cigarette packet containing nine individual bags of cocaine.

The trial court denied Vaughn's motion to suppress because it determined that "Webster had a reasonable, articulable suspicion for stopping [Vaughn], had a right to pat him down because of his conduct and that thereafter, [Vaughn] committed a criminal offense upon [Webster], which subjected him to arrest and search."

Vaughn contends this ruling was erroneous, arguing that Webster and White had no objective and particularized basis for suspecting that he was involved in any criminal activity. We do not agree. The sheriff's office had received a number of calls concerning

suspected drug activity in the area, and Webster and White saw a car stopped in the middle of a heavily traveled, dimly lit, dead-end street, with Vaughn leaning into the car and reaching his hand into it. Then, after Vaughn saw the police, but before the patrol car even stopped, he immediately placed his hand into his pocket and began walking away. Under the totality of the circumstances here, we conclude that "[t]his constituted the observation of suspicious activity . . . in an area known for drug transactions. Taken together, these observations constituted a founded suspicion sufficient to justify a brief investigatory stop. [Cits.]" *Jackson v. State*, 191 Ga. App. 439, 440 (382 SE2d 177) (1989). See also *Foster v. State*, 208 Ga. App. 699 (431 SE2d 400) (1993). The State showed that Webster's suspicion of criminal activity was justified by specific articulable facts, id., and the trial court did not err in denying his motion to suppress.

2. Vaughn moved to recuse the trial judge based upon rulings and actions taken by the same trial judge in a 1994-1995 case, in which Vaughn and numerous relatives were charged with drug offenses. Vaughn contends that in the previous case the judge demonstrated bias against him in the following ways: (1) by not sanctioning a defense attorney who had released confidential wiretap documents to the press; (2) by not reporting the attorney to the State Bar; (3) by not taking additional measures to prevent violation of the court's confidentiality order; (4) by not disclosing prior to a hearing on a motion to suppress the documents that he had been informed that the attorney was the source of the leak to the press; (5) by not limiting the media's access to the hearings; (6) by not passing a motion for recusal to another judge for decision; (7) by denying Vaughn's brother's motion to admit a custodial statement at a *Jackson-Denno* hearing without tendering it; and (8) by allowing 39 days to pass before *granting* Vaughn's motion to be discharged and acquitted for failure to provide him a speedy trial.

Alleged bias requiring recusal "must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (Citations and punctuation omitted.) *Birt v. State*, 256 Ga. 483, 485 (4) (350 SE2d 241) (1986). Furthermore, any alleged bias "must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment." (Citation and punctuation omitted.) Id. at 486. After consideration of Vaughn's claim, we find no evidence of a bias that would prevent him from receiving a fair trial in this case, a trial uninfluenced by prejudgment of the court. We therefore find no abuse of discretion in the denial of Vaughn's motion to recuse. See *Central of Ga. R. Co. v. Lightsey*, 198 Ga. App. 59, 60 (1) (400 SE2d 652) (1990) (abuse of discretion standard).

*Judgment affirmed. Johnson, C. J., Pope, P. J., Andrews, P. J., and Mikell, J., concur. Miller, J., concurs in the judgment only. Phipps, J., concurs in part and dissents in part.*

PHIPPS, Judge, concurring in part and dissenting in part.

I fully concur with the holding in Division 2, because the record does not demonstrate bias sufficient to require recusal of the trial judge. I respectfully dissent to the holding in Division 1, because I would find that the stop effected upon Vaughn was illegal.

The facts of this case do not give rise to the reasonable, articulable suspicion of criminal conduct which is necessary to justify a *Terry* stop.[1] Webster's description of Vaughn's conduct before the stop was that he walked to the car, leaned against it, put his arm on the windowsill, placed his right hand inside the car, and, upon seeing the police car, immediately stood up, put his hand in his pocket, and walked away.

These facts are no more compelling than those this court and the Supreme Court of Georgia found insufficient in *Chinnis v. State*[2] and *Hughes v. State*,[3] respectively. In *Chinnis*, at 2:00 a.m. in a high crime area of an African-American neighborhood, a police officer observed an African-American man leaning into the passenger's window of a pickup truck that was occupied by two white men. When the officer's car approached, the man stepped away from the truck and walked toward an apartment building. Subsequently, the officer stopped the truck and saw cocaine lying on the front seat. This court held that the stop was illegal because the officer lacked an objective basis for stopping the truck.[4] The court noted that the officer "did not actually see a drug transaction take place."[5]

In *Hughes*, an officer testified that at around 3:00 a.m. in a high crime, high drug activity area of an African-American neighborhood, he saw a white man drive slowly, pick up an African-American man at a corner where drug transactions were known to occur, drive circuitously through the neighborhood, and return to the area where the passenger had been picked up. The officer testified that this was a common method for drug transactions in the area and that, in his experience, most Caucasians who came into the area were looking for drugs or prostitutes. The officer stopped the vehicle. Noting that the officer had observed no hand-to-hand contact or attempted exchange of items between the men, the Supreme Court held that the officer

---

[1] See *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968).
[2] 240 Ga. App. 518-519 (1) (523 SE2d 924) (1999).
[3] 269 Ga. 258-259 (497 SE2d 790) (1998).
[4] 240 Ga. App. at 519-520.
[5] Id. at 519.

lacked reasonable, articulable suspicion for the stop.[6]

As in *Chinnis* and *Hughes*, there is no testimony here that the officers saw any hand-to-hand contact or any appearance of an exchange between Vaughn and the person inside the vehicle. In the absence of that, there was nothing about Vaughn's behavior that indicated that criminal activity was afoot. Webster had not seen Vaughn do anything which authorized him to stop Vaughn or require him to explain his behavior.

At the most, Vaughn's behavior justified the officers in continuing to observe him closely or in attempting to initiate a noncoercive encounter with him.[7] But the record clearly indicates that this stop did not occur in such a manner that "a reasonable person would [have felt] free to disregard [Webster] and go about his business."[8]

The majority relies on *Jackson v. State*[9] and *Foster v. State*.[10] *Foster* is distinguishable. Though the court stated in *Foster* that an officer's stop of Foster was justified under the *Terry* standard, it does not appear that a *Terry* stop occurred in that case. The officer merely pulled his vehicle alongside Foster, who was rapidly walking down the street, and asked to speak to him. Foster said he had not done anything, dropped a bag containing drugs, and ran. "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual . . . as long as [they] do not convey a message that compliance with their requests is required."[11]

In *Jackson*, police " 'had received a tremendous number of calls . . . about drug violations that were taking place' " on the specific street where Jackson was found seated in his truck conversing with a pedestrian. The officer testified that when he approached, "[Jackson] immediately pulled his hands down and reached toward the floorboard as if to hide something."[12] Jackson's actions appear to have been more remarkable than Vaughn's. Moreover, to the extent that *Jackson* can be read as authority for the proposition that conduct such as Vaughn's authorized the police to stop him, it should be disapproved. That reading allows for encroachment upon the basic freedoms of those who live in high crime areas. Therefore, I disagree with

---

[6] 269 Ga. at 260-261.

[7] See id. at 261.

[8] (Punctuation omitted.) *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991) (quoting *California v. Hodari D.*, 499 U. S. 621, 628 (111 SC 1547, 113 LE2d 690) (1991)); see also *United States v. Mendenhall*, 446 U. S. 544, 554 (100 SC 1870, 64 LE2d 497) (1980).

[9] 191 Ga. App. 439, 440 (1) (382 SE2d 177) (1989).

[10] 208 Ga. App. 699 (1) (431 SE2d 400) (1993).

[11] (Punctuation omitted.) *Pace v. State*, 219 Ga. App. 583, 586 (466 SE2d 254) (1995) (quoting *Florida v. Bostick*, supra, 501 U. S. at 434-435).

[12] 191 Ga. App. at 440.

the majority's reliance upon *Jackson* as authority for the proposition that Vaughn's conduct authorized the police to stop him.

This case is particularly disturbing because it is clear that Vaughn would not have been stopped had he been in a different part of town. At the suppression hearing, Webster testified that Vaughn's conduct was suspicious because it occurred in the Tenth Street area, but that "[i]f we had been in the Giant Mart parking lot, no, I probably wouldn't have thought that." By affirming this case, what is this court saying about the freedom of persons who live in "high crime" areas?

Most of our cities and towns have "high crime, high drug activity" areas. Most of the people who live in these areas are as law-abiding as those who live far away. Is it particularly suspicious for them to be out at night, approach cars, lean on them, put their arms on the windowsills, place their hands in the cars, and walk away with their hands in their pockets when the police approach? It is not. They ought to be free to move about their neighborhood without having to explain their legal behavior. In America, common, everyday, legal conduct should never be used to justify a criminal investigation — not even a *Terry* stop — in any community. Often we are blinded to Fourth Amendment violations by the fruits of the search. In our zeal to solve the drug problem, however, if we forsake the protections of the Fourth Amendment, we will lose more than we gain.

The noble goal of curtailing the drug problem cannot justify law enforcement means which run afoul of the constitutionally protected right to be free from unreasonable searches and seizures.[13] Even in a high crime, high drug activity area, persons have a right to walk to a car at 3:00 a.m., lean on it, talk to people inside it, and walk away with their hands in their pockets when they see a police car, without being suspected of criminal activity and subjected to an "investigatory stop."

I would reverse the denial of the motion to suppress.

DECIDED DECEMBER 1, 2000 —
RECONSIDERATION DENIED DECEMBER 15, 2000.

*Lynn Wilson*, for appellant.
*Richard G. Milam, District Attorney, Paul E. Hemmann, Assistant District Attorney*, for appellee.

---

[13] See *City of Indianapolis v. Edmond*, 531 U. S. 32 (121 SC 447, 148 LE2d 333) (2000).