596 S.E.2d 632 (2004)
266 Ga. App. 274
MEALOR
v.
The STATE.
No. A03A2282.
Court of Appeals of Georgia.
February 10, 2004.
Reconsideration Denied March 16, 2004.
*634 Brennan & Wasden, Savannah, Christopher D. Elrod, Scott R. Tolbert, Jefferson, for appellant.
Timothy G. Madison, Dist. Atty., Robin R. Riggs, Asst. Dist. Atty., for appellee.
*633 MIKELL, Judge.
James Kenneth Mealor was convicted of one count of aggravated sexual battery and two counts of child molestation for sexually abusing his daughter. Mealor also was convicted of one count of contributing to the delinquency of a minor for buying cocaine in the presence of his daughter. The trial court sentenced him to 20 years confinement. Mealor appeals the trial court's denial of his motion for new trial, arguing that he was denied the effective assistance of counsel. We disagree and affirm Mealor's conviction.
Viewed in the light most favorable to the jury's verdict, the record shows that Mealor began sexually abusing his daughter, C.M., when she was nine years old, by getting in bed with her every night for a week and touching her. C.M. told her mother, Susan Mealor, who confronted her husband. He denied the allegations. C.M. testified that her mother refused to believe her. Mealor convinced C.M. to tell her mother that it was a bad dream and C.M. never spoke about it again. According to C.M., Mealor resumed *635 touching her when she was in the sixth grade. C.M. testified that she was lying on the floor in the living room when Mealor asked if "he could put it in." Mealor unbuttoned and unzipped C.M.'s pants, but then stopped when C.M. protested. On another occasion, Mealor kissed C.M., putting his tongue inside her mouth. After Mealor kissed C.M., he asked her, "Why did you let me do that? Why did you let me kiss you?"
Mealor's molestation of C.M. progressed when the victim was in the seventh grade. Once, when C.M. and her family were living with her grandparents, C.M. fell asleep while Mealor was rubbing lotion on her back. When she awoke, she was lying on her back and Mealor was "fingering her." When Mealor realized C.M. was awake he stopped and asked her, "Why did you let me do that?" C.M. also testified that on a daily basis, Mealor gave her a "`titty hug' where he would put his head [on her chest] and rub [her] breasts together and squeeze them and hug." According to C.M., Mealor also came into the bathroom whenever she was taking a shower or getting out of the shower. On these occasions, Mealor gave C.M. a "titty hug," called her "baby," and squeezed her breasts and "derriere."
C.M. also testified that on several occasions, she accompanied Mealor to buy cocaine. Twice when C.M. was in high school, Mealor checked her out of school to do a drug test for him. According to C.M., she urinated in a bottle and Mealor hid the bottle on his person when he took the test.
C.M. twice told a friend/cousin, C.D., about the abuse. According to C.D., C.M. first mentioned that her father was touching her when the two were in seventh grade. In high school, C.M. told C.D. that the abuse was "still happening." C.M. eventually told her cousin J.C. about the abuse. According to C.M., she did not report Mealor's behavior because she did not want her mother to get in trouble and she knew it would rip her family apart. C.M. also testified that she was reluctant to report the abuse because, "in thinking back to fourth grade, [you] tell your mama then what just happened and she doesn't believe you, then nobody will." C.M. then told her aunt and uncle, who advised her to tell a school counselor. The school counselor contacted the authorities, who conducted an investigation and ultimately arrested Mealor. C.M. went to live with her grandparents.
Mealor argues that the trial court erred in denying his motion for new trial because he was denied effective assistance of counsel. In this regard, Mealor complains that trial counsel (a) failed to object to evidence of a mock "Christmas gift" from C.M. to her boyfriend, which was left by Mealor at C.M.'s grandparents' home; (b) failed to object to the testimony of witnesses who testified as to statements made by C.M. about the abuse; (c) failed to object when witnesses testified as to C.M.'s veracity; (d) failed to file a motion to sever on his behalf; (e) called Mealor's son to testify about the mock "Christmas gift" and referred to the gift and Mealor as "warped"; and, (f) failed to reserve objection to the court's charge.[1]
"To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies." Hardegree v. State, 230 Ga.App. 111, 113(4), 495 S.E.2d 347 (1998), citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also Woods v. State, 271 Ga. 452, 453(2), 519 S.E.2d 918 (1999); Mitchell v. State, 220 Ga.App. 264, 265, 469 S.E.2d 707 (1996). "In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where, [as here], trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome *636 this presumption." (Citations and punctuation omitted.) Wilson v. State, 277 Ga. 195, 200(2), 586 S.E.2d 669 (2003). See also Herndon v. State, 235 Ga.App. 258-259, 509 S.E.2d 142 (1998) ("there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic") (punctuation omitted). "A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless clearly erroneous." (Citations and punctuation omitted.) Williams v. State, 234 Ga.App. 191, 193(2), 506 S.E.2d 237 (1998). Bearing these principles in mind, we find no merit to Mealor's claims.
a. Mealor contends his trial counsel was deficient for not objecting to the admission of the mock "Christmas gift." Mealor argues that the evidence was irrelevant to the crimes for which he was charged. During C.M.'s testimony, the prosecutor asked whether she and Mealor had any contact since she reported the abuse. C.M. replied that Mealor had sent a Christmas gift to her grandparents' house. According to C.M., shortly after she moved in with her grand-parents, she noticed an unopened Christmas gift addressed, "To: Sean, From: [C.M.]" At the time, Sean was C.M.'s boyfriend. The package contained a bottle of red fingernail polish and a pair of pink panties with the phrase "queer sucks here" written on the crotch. C.M. recognized Mealor's handwriting on the panties. On cross-examination, C.M. testified that the gift made her mad because, "if I had not opened this package and saw this inside, I would have been humiliated if I took [the gift] to this boy and he had opened it up. He would have gotten mad at me. His whole family was there. I would not be able to look these people in the eye ever again."
The record reflects that part of Mealor's defense strategy was to convince the jury that C.M. fabricated the abuse because her father did not like Sean and her parents did not want her to move in with him. Absent testimony to the contrary, we presume that trial counsel's failure to object to the mock "Christmas gift" was part of his strategy to attack C.M.'s credibility and veracity.
Even if Mealor could show that trial counsel's failure to object to the mock "Christmas gift" was not part of his trial strategy, the evidence was otherwise admissible under Simpson v. State, 271 Ga. 772, 523 S.E.2d 320 (1999). In Simpson, the Supreme Court held that, "evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity." Id. at 774(1), 523 S.E.2d 320. Here, the mock gift showed Mealor's bent of mind to act in a sexual manner towards his daughter.
b. Mealor next argues that his trial counsel was deficient for failing to object to hearsay testimony. Specifically, Mealor points to the testimony of C.D., C.M.'s aunt, C.M.'s uncle, and C.M.'s grandmother, who merely recounted what C.M. had told them about the abuse. Mealor contends that since C.M.'s testimony was not impeached, the testimony was inadmissible as a prior consistent statement. We disagree.
A prior consistent statement is properly admitted as substantive evidence when the veracity of the witness's trial testimony has been placed in issue at trial, the witness is present at trial, and the witness is available for cross-examination. A witness's veracity is placed in issue only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination.
(Citations and punctuation omitted.) Shamsuddeen v. State, 255 Ga.App. 326(1), 565 S.E.2d 544 (2002). During cross-examination of C.M., defense counsel questioned her about her delay in reporting the incident; questioned her motivation for reporting her father, including implying that she had been promised money from her grandmother in exchange for lying about her father; questioned whether she was having "intimate relations" with Sean; and questioned her about whether she welcomed "titty hugs" from her father. As we note in section 1(a) of this *637 opinion, trial counsel's defense strategy was to show that C.M. fabricated the abuse because she was angry at her parents. Thus, it was necessary for trial counsel to raise the issue of C.M.'s veracity and trial counsel could not subsequently object to the hearsay testimony.
It is also possible that trial counsel's failure to object to hearsay in this case was part of his trial strategy to attack the credibility of the witnesses by showing their lack of personal knowledge about the abuse. See London v. State, 260 Ga.App. 780, 783(4), 580 S.E.2d 686 (2003). See also Wright v. State, 274 Ga. 730, 732(2)(b), 559 S.E.2d 437 (2002) ("Wright I") ("[a]s a general rule, matters of reasonable strategy and tactics do not amount to ineffective assistance of counsel"). Trial counsel's strategies do not constitute deficient performance.
c. Mealor next contends that trial counsel was ineffective in failing to object to improper opinion testimony of C.M.'s aunt, uncle, and grandmother that she was telling the truth about her father. Mealor argues that counsel's performance was even more deficient since he elicited much of the testimony himself on cross-examination. Mealor contends that this case is similar to Mann v. State, 252 Ga.App. 70, 555 S.E.2d 527 (2001), in which we found that defense counsel's failure to object to this type of testimony prejudiced the defense. The state, however, argues that this case is distinguishable from Mann because the six-year-old victim's testimony in that case was nonresponsive: the child either nodded his head affirmatively, or shook his head negatively when questioned by the prosecutor, and many times refused to answer the prosecutor's questions.
The record in this case shows that when asked by defense counsel whether C.M. could have been upset about something else, C.M.'s aunt responded, "Well, I love kids and II mean, I believe [C.M.]. I do." Defense counsel did not ask that the testimony be stricken. When asked by the state about C.M.'s demeanor while she was recounting the abuse, C.M.'s uncle responded,
She was very upset about it.... I advised [C.M.], I said, you know, "These are very strong allegations that you're making towards your parents, or your dad." And I said, you know, "You'd better be certain," I said, "because, you know, a lot of things are going to happen and you need to, you know, make sure you're telling me the truth...." And, you know, she told me that she was telling me the truth. I had no reason to doubt her.
No objection was made to this testimony. On cross-examination, defense counsel asked C.M.'s uncle, "Is that what you mean by `disbelief'? It was hard for you to believe what [C.M.] was telling you?" C.M.'s uncle responded, "No, it wasn't really hard to believe what [C.M.] was telling me." Finally, on cross-examination, defense counsel asked C.M.'s grandmother the following question: "Did you believedid you have any question in your mind that [the abuse] ever started?" C.M.'s grandmother replied, "I can't truthfully say that I had questions in my mind...." Defense counsel did not ask that these statements be stricken.
It is well established that the credibility of a witness is to be determined by the jury, and the credibility of a victim may not be bolstered by the testimony of another witness. See OCGA § 24-9-80. See also Mann, supra at 72(1), 555 S.E.2d 527; Gosnell v. State, 247 Ga.App. 508, 509-510(2)(b), 544 S.E.2d 477 (2001). In this case, all three witnesses testified that they believed C.M. was telling the truth about the abuse. Trial counsel's failure to object to the testimony or request that it be stricken constituted deficient performance. However, unlike in Mann, the testimony in this case was not so significant as to have contributed to the jury's verdict, particularly in light of C.M.'s testimony.[2] Accordingly, Mealor has *638 failed to demonstrate that but for counsel's failure to object or move to strike, a reasonable probability exists that the result of the trial would have been different.
d. Mealor contends that trial counsel was ineffective for failing to file a motion to sever the charge of contributing to the delinquency of a minor because it was substantially different from the other counts, which involved sexual crimes. We disagree.
Severance is required if offenses are joined solely because they are similar in nature. Severance is not mandated, however, where the similarity of the offenses is coupled with evidence of a pattern which shows a common motive, plan, scheme, or bent of mind. Where the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joinedsubject to the right of the defendant to severance in the interests of justice. Severance in this particular kind of circumstance lies within the sound discretion of the trial judge.
(Citations and punctuation omitted.) Loyless v. State, 210 Ga.App. 693, 695(3), 436 S.E.2d 814 (1993). See also Wright v. State, 259 Ga.App. 74, 77-78(3)(b), 576 S.E.2d 64 (2003) ("Wright II"); Quick v. State, 166 Ga.App. 492, 494(3), 304 S.E.2d 916 (1983) ("[o]ffenses may be joined for trial when they are based... on a series of acts connected together or... on a series of acts constituting parts of a single scheme or plan") (punctuation omitted). Even though the evidence supporting this offense did not involve sexual activity with C.M., Mealor's conduct reflected a pattern of deviant conduct toward his daughter. See Wright II, supra at 78(3)(b), 576 S.E.2d 64 (finding that severance is not required where the conduct alleged "reflect[s] a pattern of deviant conduct toward family members"). Further, "the offenses charged were not so numerous or the evidence so complex that, prior to trial, the court could find that the trier of fact would be unable to distinguish the evidence and apply the law intelligently as to each offense." (Citation and punctuation omitted.) Loyless, supra at 695(3), 436 S.E.2d 814.
Additionally, as we noted in section 1(a), trial counsel was never questioned regarding a motion to sever. Accordingly, counsel's actions are presumed strategic. "[T]he decision whether to move for severance is a matter of trial tactics, and the failure to file such a motion does not require a finding that counsel was ineffective." Corn v. State, 256 Ga.App. 364, 365(4), 568 S.E.2d 583 (2002). See also Warren v. State, 197 Ga.App. 23, 24(1), 397 S.E.2d 484 (1990).
e. Mealor contends trial counsel was ineffective for calling Mealor's son to testify further about the mock "Christmas gift" and for referring to the gift and/or Mealor as "warped." Mealor did not raise the issue of his son's testimony during the hearing on the motion for new trial, and the trial court did not address this claim in its order. Since this court "will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal," that argument is waived. (Punctuation and footnote omitted.) Morris v. Johnson, 262 Ga.App. 182, 185, 585 S.E.2d 375 (2003).
As for trial counsel's references to the gift and/or Mealor as "warped," as we noted previously, "[i]n the absence of testimony to the contrary, counsel's actions are presumed strategic." Presumably, defense counsel's trial strategy was to acknowledge the inappropriateness of the mock gift and attempt to persuade the jury that even though Mealor may have a "warped" sense of humor, he did not molest his daughter. "With the benefit of hindsight, it would appear that this strategy may have backfired. But that is not to say that it was ineffective." (Citation and punctuation omitted.) Phillips v. State, 277 Ga. 161, 163(b), 587 S.E.2d 45 (2003).
f. Lastly, Mealor complains that trial counsel rendered ineffective assistance of counsel because he failed to reserve objections to the jury charge. Inasmuch as Mealor has cited no error in the jury charges that were given, trial counsel's failure to *639 reserve objections, without a showing of deficient performance and prejudice to his defense, is not ineffective assistance. See Bates v. State, 259 Ga.App. 232, 235(3)(d), 576 S.E.2d 619 (2003); Harris v. State, 257 Ga.App. 819, 827(2)(g), 572 S.E.2d 370 (2002) ("[f]ailure to object to a court's charge, however, is not ineffective assistance where the appellant does not show how this prejudiced his case") (citation and punctuation omitted.) The trial court did not err in denying Mealor's motion for new trial.
Judgment affirmed.
JOHNSON, P.J., and ELDRIDGE, J., concur.
NOTES
[1] In his brief, Mealor enumerates a seventh ground; namely, that counsel elicited testimony from the state's witnesses on cross-examination which would have been inadmissible and objectionable if presented by the state. However, Mealor offers no argument or citation of authority in support of this claim of error. Accordingly, we deem it abandoned. See Court of Appeals Rule 27(c)(2).
[2] In Mann, we reversed the defendant's conviction for aggravated sodomy because he satisfied the second prong of Strickland. In that case, we found that counsel's failure to object to the objectionable testimony prejudiced the defense because the only evidence of the defendant's guilt arose out of statements made by the victim, whose testimony was "far from compelling," and the victim's statements varied in material respects. The victim told differing accounts to his stepmother, a sheriff's investigator and a professional counselor. Mann, supra at 73, 555 S.E.2d 527.