## A06A1485. MATTIS v. THE STATE.
### (637 SE2d 787)

BERNES, Judge.

A Cobb County jury found Michael Mattis guilty of aggravated assault and aggravated battery. On appeal, Mattis claims that the trial court erred in allowing victim impact evidence during the guilt/innocence phase of the trial, and in allowing impeachment of his character based on a pending charge. Mattis also contends that the evidence was insufficient to support a guilty verdict, and that he received ineffective assistance of counsel. For the reasons set forth below, we disagree and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation omitted.) *Andrews v. State*, 270 Ga. App. 362 (606 SE2d 587) (2004).

So viewed, the evidence shows that in October 2003, Mattis was more than 90 days behind on his car payments. The bank arranged for Mattis to voluntarily surrender the car to Paul Melton, a professional recovery agent, but Mattis never appeared at the agreed-upon location. A few days later Melton's employer apprised him of an address where he could pick up Mattis's car.

Melton went to the address and found the car, a Ford Expedition. While Melton was in the process of loading the Expedition onto his tow truck, Mattis climbed into the Expedition, started it, and tried without success to drive the Expedition off the tow truck, causing the Expedition's tires to blow out. Mattis then got out of the Expedition and entered the tow truck through the passenger side door, where he punched Melton in the side of the head. After Melton got out of the tow truck, Mattis grabbed a pry bar and began swinging it at Melton.

Mattis chased Melton around the parking lot with the pry bar while Melton tried to block the swings with his arms. Mattis landed

a swing on Melton's forehead, which knocked Melton down. Mattis continued to swing, breaking one of Melton's arms.

Melton was able to talk Mattis into allowing him to lower the Expedition so that Mattis could take the car. Shortly after Mattis left, a police officer arrived at the scene. Officers found the Expedition about 15 minutes later abandoned in a driveway. There was blood on the steering wheel. The pry bar, which also had blood on it, was on the passenger's seat.

Officers talked to Melton at the scene. An officer saw that the blow to Melton's head had pulled the flesh away, revealing "his skull or muscles over his skull." Melton's broken arm was misshapen, swollen, and deep purple.

1. Mattis contends that there was insufficient evidence to convict him of the charged offenses. We disagree. In light of the trial testimony, a rational trier of fact could have found Mattis guilty beyond a reasonable doubt of aggravated battery and aggravated assault. See *Brown v. State*, 275 Ga. App. 99, 100-101 (1) (619 SE2d 789) (2005) (evidence that the defendant hit his wife's head with a sword, cutting her face and scalp, was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt of aggravated battery); *Coney v. State*, 209 Ga. App. 9, 12 (3) (432 SE2d 812) (1993) (evidence that defendant beat the victim with a metal cane was sufficient to show use of an instrumentality in a way that was likely to cause serious injury and to authorize any rational trier of fact to find him guilty beyond a reasonable doubt of aggravated assault).

2. Mattis claims that the trial court erred in allowing victim impact evidence to be presented during the guilt/innocence phase of the trial. Mattis, however, never objected to any of the prosecutor's statements or Melton's testimony now alleged to be improper. Accordingly, this issue has been waived on appeal. See *Tollette v. State*, 280 Ga. 100, 105-106 (11) (621 SE2d 742) (2005); *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992) ("Errors not raised in the trial court will not be heard on appeal.") (citation omitted).

3. Mattis contends that the trial court erred in allowing the prosecutor to question him about his arrest for simple battery in a different case. He argues that the questioning about the arrest was not a legal method of impeachment under Georgia law. Mattis's failure to object at trial precludes review of the issue on appeal. See *Manley v. State*, 187 Ga. App. 773, 777 (6) (371 SE2d 438) (1988).

4. Mattis also claims that he received ineffective assistance of trial counsel. "To prevail on this claim, [Mattis] has the burden to demonstrate that trial counsel's performance was deficient and that, but for that deficient performance, it is reasonably probable that the result of the trial would have been different." (Citation and punctuation omitted.) *Johnson v. State*, 275 Ga. App. 21, 25 (7) (619 SE2d 731)

(2005). "The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." (Citation omitted.) *Robinson v. State*, 278 Ga. 31, 34 (3) (597 SE2d 386) (2004).

(a) Mattis contends that his trial counsel was ineffective because he failed to object to the introduction of victim impact evidence during the guilt/innocence portion of the trial. Melton testified at trial that because of his injuries he was not able to drive or to work, and that he had panic attacks. Assuming, without deciding, that at least some portion of Melton's testimony was improper victim impact evidence, we conclude that trial counsel's decision not to object to the testimony was a matter of trial strategy and thus did not constitute deficient performance.

At the hearing on the new trial motion, Mattis's trial counsel explained that he did not object to Melton's testimony regarding the extent of Melton's injuries because counsel knew that Mattis was going to testify, and counsel anticipated that Mattis's testimony would show that Mattis struck Melton "rather severely." Accordingly, trial counsel decided that testimony as to the extent of Melton's injuries was not important, and trial counsel did not want to emphasize Melton's testimony by objecting at that time. "The matter of when and how to raise objections is generally a matter of trial strategy." (Citation omitted.) *Gibson v. State*, 272 Ga. 801, 804 (4) (537 SE2d 72) (2000). We cannot say that trial counsel's failure to object was professionally unreasonable. See *Robinson v. State*, 278 Ga. at 36 (3) (c) (trial counsel's decision not to object to prosecutor's comments was not professionally unreasonable where trial counsel did not think the comments were particularly damaging under the circumstances).

(b) Mattis further contends that his trial counsel was deficient for failing to object to the prosecutor's impeachment of Mattis through reference to Mattis's arrest for simple battery. The record shows that a defense witness testified that she had never known Mattis to lose his temper or to get into a fight with anyone. The prosecutor subsequently asked, over the objection of Mattis's trial counsel,[1] whether the witness had heard of Mattis being charged with battery in Cobb County. The witness said that she had not.

Later, during Mattis's direct testimony, trial counsel asked Mattis about the simple battery charges, prefacing his question by stating "just so it doesn't look like we're trying to hide something." Mattis told the jury that he had not been convicted of the charges, and that he was

---

[1] The objection was properly overruled. See *Medlock v. State*, 264 Ga. 697, 698-699 (449 SE2d 596) (1994).

not guilty of the charges. On cross-examination, the prosecution posed several questions to Mattis about the simple battery charges, to which Mattis's trial counsel did not object.

We conclude that trial counsel's failure to object to the cross-examination of Mattis on the simple battery charge did not constitute deficient performance. At the new trial hearing, trial counsel testified that once the subject of the simple battery charge had come out at trial, he did not object to the cross-examination of Mattis because "I would think that sort of implies to the jury we've got something to hide." Instead, his plan was for Mattis to "explain . . . away" the simple battery charge. Hence, the record reflects that trial counsel's decision to object was a strategic one which we decline to second guess on appeal. See *Smith v. State*, 261 Ga. App. 871, 877 (5) (a) (583 SE2d 914) (2003).

Furthermore, once Mattis testified in his direct testimony about the simple battery charges, the prosecutor was permitted to question Mattis about the charges on cross-examination. See *Lockett v. State*, 188 Ga. App. 645, 645-646 (3) (373 SE2d 768) (1988) (appellant's testimony as to time he spent in "disciplinary" at a correctional institute opened the topic for cross-examination). An objection by trial counsel to the prosecutor's line of questioning on cross-examination thus would have been without merit. Consequently, the failure to object did not constitute deficient performance. See *Moore v. State*, 278 Ga. 397, 401 (2) (e) (603 SE2d 228) (2004) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citation and punctuation omitted).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 20, 2006.

*Thomas S. Robinson III*, for appellant.
*Patrick H. Head, District Attorney, Reuben M. Green, Amelia G. Pray, Assistant District Attorneys*, for appellee.