659 S.E.2d 711 (2008)
ADAMS
v.
The STATE.
No. A07A1758.
Court of Appeals of Georgia.
March 14, 2008.
*713 Christopher A. Frazier, Atlanta, for Appellant.
Peter J. Skandalakis, Dist. Atty., La Grange and Robert Nicholas Peterkin, Asst. Dist. Atty., for Appellee.
BARNES, Chief Judge.
A jury found Donald Adams guilty of child molestation and aggravated child molestation. Adams appeals, alleging that he received ineffective assistance of counsel. He further argues that newly discovered evidence requires a new trial and that the trial court erred in failing to grant his motion to recuse. For reasons that follow, we affirm.
Viewed favorably to the verdict, see Redd v. State, 281 Ga.App. 272, 635 S.E.2d 870 (2006), the evidence shows that Adams had custody of his six-year-old son, D.L.A., and the mother had visitation rights. During a visit in September 2001, the mother heard D.L.A. telling his brother about intimate female body parts. When she asked D.L.A. where he had learned about these parts, he responded that his father allowed him to watch "nasty movies . . . that they do bumping on." Two weeks later, the mother again heard D.L.A. talking about the movies. The mother asked D.L.A. whether anyone had touched him inappropriately, and he stated: "daddy . . . made me suck his penis" and "pee peed in [my] mouth."
In two interviews with police, D.L.A. consistently made the same allegations regarding Adams. D.L.A. also told a pediatrician that he had touched his father's private parts, and a psychological evaluation revealed that D.L.A. suffered from emotional and behavioral problems suggesting that he had been sexually abused or at least exposed to inappropriate sexual stimuli. The investigating officer subsequently interviewed Adams, who denied the allegations and asserted that D.L.A.'s mother had fabricated the claims because she was angry with him. Adams, however, also admitted that he owned numerous pornographic videos, which he turned over to police.
D.L.A. repeated his allegations at trial. He testified that Adams showed him "nasty" movies with naked people having sex. He further testified that his father made him put his mouth on his father's penis and that his father "peed in [his] mouth." According to D.L.A., Adams instructed him not to tell anyone about the incident or he would "get a whooping."
1. Adams claims that he received ineffective assistance of counsel at trial. To succeed in this claim, Adams must demonstrate that trial counsel's performance was deficient and that the deficiency prejudiced his defense. Redman v. State, 281 Ga.App. 605, 606(3), 636 S.E.2d 680 (2006). The necessary showing requires Adams to overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional performance. Crawford v. State, 252 Ga.App. 722, 725(3), 556 S.E.2d 888 (2001). As we have found, "tactical decisions, even if they misfire, do not generally equate with ineffectiveness." Id.
(a) Adams alleges that his attorney was ineffective in failing to object or move for a mistrial in response to testimony that Adams had previously been accused of physically abusing D.L.A. The record shows that this testimony was first presented during trial counsel's cross-examination of D.L.A.'s mother, who mentioned the allegation. Although the mother's testimony was not particularly responsive to counsel's question, *714 counsel did not object, move to strike it, or request other curative action.
"`[W]hen and how to raise objections is generally a matter of trial strategy.'" (Citation omitted.) Mattis v. State, 282 Ga.App. 49, 51(4)(a), 637 S.E.2d 787 (2006). And the record shows that Adams failed to call trial counsel as a witness at the hearing on his motion for new trial. Absent counsel's testimony, Adams cannot easily rebut the presumption that the decision not to object constituted reasonable trial strategy. Mealor v. State, 266 Ga.App. 274, 276, 596 S.E.2d 632 (2004).
Moreover, through further questions, counsel established that the mother initially accused Adams of this physical abuse, but that authorities later dismissed the resulting criminal charges and Adams was awarded custody of D.L.A. Counsel thus turned the nonresponsive answer into support for his primary defense at trial: that the mother fabricated the molestation allegations and convinced her young son to accuse his father because she was angry at Adams and wanted custody of D.L.A. Under these circumstances, we must presume that counsel's failure to object was a reasonable trial strategy and not deficient performance. See Evans v. State, 288 Ga.App. 103, 108(3)(b), 653 S.E.2d 520 (2007); Mealor, 266 Ga.App. at 277(a), 596 S.E.2d 632.
(b) Adams claims that trial counsel erred in allowing the investigating officer to testify on cross-examination that she "believed[d] the child." The record shows, however, that counsel elicited this testimony while attacking the police investigation, suggesting that the investigator took a young child's allegations as "gospel" and investigated no further. Given Adams' failure to call trial counsel as a witness at the new trial hearing, we presume that counsel's questions were part of a reasonable, strategic effort to undermine the State's case. See Green v. State, 281 Ga. 322, 323-324(2), 638 S.E.2d 288 (2006) (no deficient performance where counsel sought to undermine a witness's credibility "by mocking the detective's belief in a witness whose statements were so inconsistent").
(c) Adams also complains about another exchange between trial counsel and the investigating officer. After establishing that some abused children "act out" what happened to them, counsel asked: "You didn't interview any of the teachers. [D.L.A.] didn't act it out at school to your knowledge?" The officer responded: "He committed an act of sodomy on his brother." At that point, trial counsel objected on foundation grounds, stating: "I asked her if she interviewed any teachers and she came up with some crazy wild allegation that we've never heard of." The trial court overruled the objection after finding that counsel had "opened the door" to the testimony.
Adams argues that by eliciting this testimony, trial counsel presented evidence supporting D.L.A.'s claim of abuse. Again, however, Adams failed to call counsel as a witness at the new trial hearing, leaving us with no insight into counsel's decisions regarding this line of questioning. Perhaps counsel had been informed that D.L.A. had not acted out sexually and, using that information, attempted to raise questions about the abuse claim. Moreover, although the trial court found that counsel had opened the door to the investigator's testimony, the testimony was not directly responsive to counsel's question.
It appears that counsel's cross-examination tactics may have backfired. But as noted above, a reasonable tactic that backfires does not constitute deficient performance. See Crawford, 252 Ga.App. at 725(3), 556 S.E.2d 888. And under the circumstances, Adams cannot overcome the presumption of reasonable strategy or establish ineffective assistance on this ground. See Buchanan v. State, 273 Ga.App. 174, 180(2), 614 S.E.2d 786 (2005) (counsel's calculated risk that victim could not identify defendant at trial was not unreasonable); Browne v. State, 261 Ga.App. 648, 649-650(2), 583 S.E.2d 496 (2003) (no ineffective assistance where counsel surprised by testimony of witness who changed his story at trial).
(d) In a separately enumerated error, Adams broadly argues that the "quantum of harmful error and the deficient performance" of trial counsel requires a new trial. Adams, *715 however, has not shown that counsel performed deficiently, undermining this claim of error. See Waits v. State, 282 Ga. 1, 6(4), 644 S.E.2d 127 (2007).
2. Adams asserts that the trial court erred in denying his motion for extraordinary new trial based on newly discovered evidence. According to Adams, this evidence proved that someone else  specifically, D.L.A.'s cousin, J.P.  committed the offenses.
To obtain a new trial based on newly discovered evidence, Adams must show that (1) he discovered the evidence after the trial; (2) his failure to discover it sooner did not result from a lack of due diligence; (3) the evidence is so material that it would probably produce a different verdict; (4) the evidence is not merely cumulative of other evidence admitted at trial; (5) the affidavit of the witness presenting the evidence has been procured or its absence accounted for; and (6) the effect of the new evidence is not merely to impeach the credibility of a witness. Timberlake v. State, 246 Ga. 488, 491(1), 271 S.E.2d 792 (1980). Failure to satisfy any one of these requirements precludes the grant of a new trial. See id.
(a) At the hearing on his motion for new trial, Adams offered evidence that during the relevant time frame, D.L.A. often spent time after school at the home of his aunt and uncle, playing with his ten-year-old cousin J.P. and J.P.'s half brother. According to the aunt, one afternoon she left J.P., D.L.A., and her younger son playing in the home while she walked up the street. She later returned home to find D.L.A. and her younger son locked in her bedroom, upset. When she asked D.L.A. what had happened, he stated that J.P. asked him to "kiss" J.P.'s penis and that J.P. urinated in his mouth. He further stated that J.P. had threatened him with a butcher knife to keep him from disclosing the incident.
The aunt and uncle confronted J.P. about the incident. J.P. denied taking part in the acts described by D.L.A., but admitted that he had touched D.L.A. inappropriately on three or four occasions. Although the aunt and uncle told several family members and J.P.'s school about his conduct, they claim that they did not inform Adams about it until after Adams' trial, when the aunt first learned the exact nature of D.L.A.'s allegations. Adams also offered evidence that J.P. had been accused of inappropriate sexual activity with two other children, and, following the new trial hearing, J.P. pleaded guilty to molesting one of these children.
On appeal, Adams does not simply contend that J.P. is a sexual predator who molested D.L.A. on several occasions. He argues that J.P. committed the specific acts giving rise to the indictment, but that D.L.A. accused his father of the crimes because he was scared of J.P. Adams has pointed to no evidence that J.P. admitted to these exact acts. Instead, Adams' claim rests on D.L.A.'s alleged statement to his aunt, in which he purportedly attributed the acts to J.P.
At trial, however, D.L.A. testified that Adams committed the acts. And evidence of D.L.A.'s alleged statement to his aunt serves only to impeach his very specific trial testimony. Accordingly, the trial court properly found this evidence insufficient to support a new trial. See Parnell v. State, 260 Ga.App. 213, 217(4), 581 S.E.2d 263 (2003) (co-defendant's post-trial statement that defendant took no part in crime did not support grant of new trial because statement operated to impeach victims' positive identification of defendant at trial); Waddell v. State, 224 Ga. App. 172, 175(4), 480 S.E.2d 224 (1996) (newly discovered evidence that victim had denied defendant's involvement in crime did "nothing more than contradict the victim's trial testimony" and thus did not require a new trial); Harris v. State, 196 Ga.App. 304, 306(4), 396 S.E.2d 288 (1990).
(b) Adams also claims that D.L.A. recanted his testimony to his grandmother. The record shows, however, that this alleged recantation occurred before Adams' trial, and the grandmother testified at trial about D.L.A.'s statements. Such evidence, therefore, was not "newly discovered." See also Leon v. State, 237 Ga.App. 99, 104-105(3)(b), 513 S.E.2d 227 (1999) (generally, recantation by victim serves only to impeach previous testimony and does not authorize a new trial).
*716 (c) Adams asserts that following his trial, he was diagnosed with genital herpes, a condition that likely would have been transmitted to D.L.A. if the claimed abuse had occurred. But Adams was aware at trial that he suffered from a genital malady, and he described his condition to jurors. Moreover, although he had not sought medical treatment, he assumed that the condition was sexually transmitted. Given that Adams could have obtained an exact medical diagnosis before trial with minimal effort, the trial court properly denied his motion for new trial on this ground. See Croy v. State, 195 Ga.App. 500, 500-501, 393 S.E.2d 756 (1990).
3. Finally, Adams claims that the trial court erred in refusing to recuse itself. When presented with a recusal motion, a trial court must immediately determine (1) the timeliness of the motion, (2) the legal sufficiency of the supporting affidavit, and (3) whether, assuming the facts alleged in the affidavit to be true, recusal would be warranted. See Uniform Superior Court Rule 25.3. The motion must be filed no later than five days after the movant learns of the alleged grounds for recusal. See USCR 25.1. And it must demonstrate that the trial judge harbored a bias stemming from an extrajudicial source that was "of such a nature and intensity that it would impede the exercise of impartial judgment." (Citation omitted.) Wellons v. State, 266 Ga. 77, 88(18), 463 S.E.2d 868 (1995). We review the denial of a motion to recuse for abuse of discretion. Vaughn v. State, 247 Ga.App. 368, 370(2), 543 S.E.2d 429 (2000).
The record shows that the trial court held the hearing on Adams' motion for new trial on July 18, 2005. At the conclusion of that hearing, defense counsel agreed to file a brief on the issues within ten days after receipt of the transcript. The transcript was completed in August 2005. Defense counsel, however, never submitted a brief, and the trial judge telephoned him in approximately May 2006, accusing him of abandoning his client. On August 18, 2006, the judge telephoned counsel again, repeated the abandonment accusation, and stated that he intended to enter an order adverse to Adams.
Three days later, Adams moved to recuse the trial judge. In his motion and supporting affidavit, Adams asserted that the trial judge (1) indicated before the new trial hearing that he had "pre-judged" the merits of the motion for new trial; (2) directed unnecessary rage toward defense counsel at the new trial hearing; (3) improperly accused counsel of abandoning his client in May 2006; and (4) repeated this accusation in an August 2006 telephone message.
As an initial matter, any effort to recuse the trial court based on conduct occurring before August 2006 was untimely. See Thurman v. State, 249 Ga.App. 390, 390-391(1), 547 S.E.2d 715 (2001); USCR 25.1. We are left, therefore, with Adams' allegation regarding the August 2006 telephone call. And we agree with the trial court that, even if true, this allegation does not demonstrate the requisite bias.
Counsel failed to file a brief supporting the motion for new trial for over one year, and he did not ask for relief from the filing requirement. In response to this failure, the trial court legitimately expressed concern that counsel had abandoned his client. Although the trial judge also stated that he intended to issue an order adverse to Adams, nothing in this statement reveals any bias. And neither the trial court's overall conduct nor ultimate ruling in the case evidences bias or partiality. Accordingly, the trial court properly denied the motion to recuse. See Vaughn, 247 Ga.App. at 370(2), 543 S.E.2d 429.
Judgment affirmed.
SMITH, P.J., and MILLER, J., concur.