A10A0023. NELSON v. THE STATE.

(691 SE2d 363)

MIKELL, Judge.

Bruce Nelson, Jr., was charged with committing forgery in the second degree and child molestation on his ten-year-old neighbor, K. D. The forgery charge was based on Nelson's possession of counterfeit currency. A jury found him guilty of sexual battery (as a lesser included offense of child molestation) and forgery. Nelson appeals from the denial of his motion for new trial, contending that the evidence was insufficient to sustain his conviction for forgery and that he received ineffective assistance of counsel. For the following reasons, we affirm in part and reverse in part.

Viewed in the light most favorable to the verdict, the evidence reveals that on June 12, 2006, a visibly intoxicated Nelson let himself into K. D.'s home while her mother was at the grocery store and asked for a cigarette. K. D. told him to leave and then called her friend, M. A., and asked her to come over and watch a movie. While M. A. was en route, Nelson returned to K. D.'s house and let himself in through an unlocked door. He came over to K. D., who was sitting on a chair in the living room, held her arms, and proceeded to touch her breasts through her shirt. K. D. testified that she was unable to get up and that she was fighting to get Nelson off of her when M. A. entered the house. M. A. testified that when she walked into K. D.'s house, Nelson was "on top of [K. D.] . . . touching her boobs . . . and [K. D.] was pushing and trying to get him off of her." According to M. A., she picked up a bat that was lying next to the front door and told Nelson to leave. Nelson got off of K. D. when he saw M. A. enter

the room and then left the house. The girls locked themselves in K. D.'s house until her mother returned a short time later. By that time, a neighbor had called the police when she noticed Nelson stumbling around the neighborhood.

When Officer Julie Ann Welch of the Holly Springs Police Department responded to the call, she encountered a belligerent Nelson and noticed that he smelled strongly of alcohol. Welch then became aware that K. D. and M. A. were crying and spoke with the two girls. After that conversation, Welch placed Nelson under arrest and transported him to the Cherokee County jail. While Nelson's personal items were being inventoried, officers recovered a counterfeit $100 bill from his wallet. According to Welch, Nelson was present when officers discovered the counterfeit bill. After the officers laughed about the bill, "because the color green was so off," Nelson commented with a smile on his face that "[the police] couldn't charge him with it because he only possessed one of them."

At trial, Nelson denied touching K. D.'s breasts and claimed that he was tickling her "like just playfully like I've [done] a hundred times." Nelson was not questioned about the $100 bill.

1. Nelson contends that his forgery conviction must be reversed because the state failed to prove the intent to defraud required by the statute. We agree.

OCGA § 16-9-2 (a) provides that a person commits the offense of forgery in the second degree

> . . . when with the intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority.

Forgery may be proved by circumstantial evidence.[1] And, while "[a] person will not be presumed to act with criminal intention . . . [,] the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[2] We held in *Velasquez v. State*,[3] that in forgery cases, "[i]ntent to defraud is most commonly proved by showing delivery or use of the writing,

---

[1] See *Dyous v. State*, 195 Ga. App. 99 (2) (392 SE2d 730) (1990).

[2] OCGA § 16-2-6.

[3] 276 Ga. App. 527 (623 SE2d 721) (2005).

or some other associated writing."[4] Flight is also a factor.[5] For example, in *Browning*,[6] we found sufficient circumstances to authorize the defendant's conviction for forgery in the second degree where the evidence showed that the defendant had just attempted to pass a forged check to a bank; he possessed a third forged check; and he attempted to flee.[7] Such circumstances do not exist in this case, and we agree with Nelson that *Velasquez*[8] controls. As in that case, Nelson did not present the $100 bill; it was only found when officers inventoried his personal effects prior to booking him into the jail. The state did not present evidence that Nelson had ever presented or attempted to negotiate the bill to anyone at any time; "all that was shown was mere possession."[9]

The state contends that this case is distinguishable from *Velasquez* because here, there was evidence of words, conduct, and demeanor tending to show an intent to defraud; namely, that instead of proclaiming his innocence when the officers laughed about the bill, Nelson chose to make a joke about how he could not be charged if he only possessed one counterfeit bill. The state argues that "[Nelson's] implicit acknowledgment of the fact that he could not be charged criminally for possessing the bill is some evidence of guilty knowledge." We do not agree. Nelson's comment proves either knowledge that he *possessed* the bill in his wallet or knowledge of Georgia's forgery law; it does not prove intent to defraud as required by the statute. Accordingly, we reverse Nelson's forgery conviction.

2. Nelson next contends that his trial counsel was ineffective.

> In order to prove his claim of ineffective assistance of counsel, [Nelson] must establish both prongs of the test set out in *Strickland v. Washington*:[10] (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.[11]

"A reasonable probability is a probability sufficient to undermine

---

[4] Id. at 529 (2).

[5] See *Browning v. State*, 174 Ga. App. 759, 760-761 (3) (331 SE2d 625) (1985).

[6] Id.

[7] Id.

[8] Supra.

[9] Id. at 530 (2).

[10] 466 U. S. 668, 695-696 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).

[11] (Footnote omitted.) *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008).

confidence in the outcome.''[12] Failure to satisfy either prong of the two-part *Strickland* test is fatal to an ineffective assistance claim.[13] "[A] trial court's finding that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous.''[14] We conduct a de novo review of the lower court's legal conclusions.[15]

(a) Nelson contends that counsel was ineffective for failing to file a motion to sever the two charges, arguing that he was forced to defend against a charge involving dishonesty while asking a jury to find his testimony credible as to the molestation charge.

"[T]he decision regarding whether to file a motion to sever is a matter of trial tactics and strategy, and the fact that such a motion was not filed does not require a finding that trial counsel was ineffective.''[16] At the motion for new trial hearing, defense counsel testified that he considered filing a motion to sever but decided not to because he wanted the jury to see how "ridiculous the [bill] looked[, that it was] a joke." According to counsel, if the jury could see that it was a joke, they would believe Nelson's testimony regarding his actions with K. D.[17] While counsel never actually questioned Nelson at trial about the counterfeit bill, he posed several questions to Welch, attempting to imply that Nelson thought the document was a joke. "With the benefit of hindsight, it would appear that this strategy may have backfired. But that is not to say that it was ineffective.''[18]

In any event, Nelson has failed to show that a motion to sever would have been granted or a reasonable probability that but for trial counsel's alleged deficient performance in failing to file a motion to sever the outcome of the trial would have been different. "The absolute right to severance exists only where offenses have been joined solely because they are of the same or similar charac-

---

[12] *Strickland*, supra at 694 (III) (B). See also *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009).

[13] *Thomas*, supra.

[14] (Footnote omitted.) *White v. State*, 293 Ga. App. 241, 242 (1) (666 SE2d 618) (2008).

[15] *Robbins v. State*, 290 Ga. App. 323, 329 (4) (659 SE2d 628) (2008).

[16] (Footnote omitted.) *Clowers v. State*, 299 Ga. App. 576, 579 (2) (c) (683 SE2d 46) (2009).

[17] See, e.g., *Smallwood v. State*, 296 Ga. App. 16, 22-23 (4) (b) (673 SE2d 537) (2009) (trial counsel's decision to acknowledge defendant's criminal history for purpose of showing that he would have pled guilty if he had committed the instant crime was reasonable trial strategy); *Mealor v. State*, 266 Ga. App. 274, 281 (e) (596 SE2d 632) (2004) (while trial counsel's strategic decision to acknowledge inappropriate "mock" gift of panties and fingernail polish may have backfired, it did not amount to ineffective assistance).

[18] (Citation and punctuation omitted.) *Mealor,* supra. See *Thomas,* supra at 804 (6) ("when one is considering matters of trial strategy and tactics, the effectiveness of trial counsel must not be judged by hindsight or the ultimate result of the trial") (punctuation and footnote omitted).

ter."[19] When such is not the case, severance lies within the sound discretion of the trial court.[20]

> [I]n the exercise of that discretion [the trial court] must balance the interest of the defendant with the interest of the [s]tate. In so doing, a trial court must look to the number and complexity of the offenses charged and determine whether a trier of fact can parse the evidence and apply the law with regard to each charge. If the trier of fact cannot do so fairly and intelligently, severance would be in order.[21]

There was nothing complex about these two offenses that would make it difficult for the trier of fact to distinguish the evidence and apply the law intelligently as to each offense. Accordingly, a motion to sever likely would have been futile, and trial counsel's decision on this issue does not amount to ineffective assistance of counsel.[22]

(b) Nelson next contends that trial counsel performed deficiently in introducing into evidence Welch's interview with K. D. and M. A. without requesting redaction of several damaging statements. In the videotape, M. A. told Welch that a neighborhood child gave drugs he got from his mother to Nelson; that Nelson told M. A. to call him when she turned 16; and that Nelson "took a picture of her butt" with his camera phone. Defense counsel sought to introduce the videotape to show the girls' inconsistent statements. Prior to introducing the videotape, defense counsel explained to the trial court that there were a few things in M. A.'s interview that might be objectionable but that Nelson had consented to waiving any objection to those statements being played for the jury. Counsel further stated that "the benefit of the jury hearing [the girls'] inconsistent statement far outweighs any harm that might come as a result." The trial court questioned Nelson about trial counsel's proposed action, and Nelson stated that he agreed with counsel's decision to play the unredacted tape. At the motion for new trial hearing, counsel testified that he did not request redaction of M. A.'s statements because he

> thought that it would be part of the trial strategy to show the vivid imagination that both of these girls have — or had. That both of their statements were inconsistent with each

---

[19] (Citation omitted.) *Bland v. State*, 264 Ga. 610, 611 (2) (449 SE2d 116) (1994).

[20] See *Coats v. State*, 234 Ga. 659, 662 (4) (217 SE2d 260) (1975).

[21] (Citations omitted.) *Stewart v. State*, 277 Ga. 138, 139 (587 SE2d 602) (2003).

[22] See *Troutman v. State*, 297 Ga. App. 196, 199 (3) (a) (676 SE2d 836) (2009).

other. And, in fact, [K. D.'s] testimony here in the courtroom was substantially different that what her statement was reflected in the videotape. She talked about being raped here in the courtroom. So that again, just, I think, amplified her imagination. To allow the jury also to hear things like the — taking a picture of one of their butts. Drugs and smoking was also referenced in there. All of these characteristics that were expressed on the videotape as well as in the courtroom of eleven and twelve year old girls I felt like would persuade the jury that they were exaggerating the fact that — or the intention that Mr. Nelson had in touching [K. D.]. Mr. Nelson and I had talked on numerous occasions about whether or not he would testify, and it was his desire to testify. That he would explain to the jury that he did touch [K. D.] and the reason for doing so was to tickle her. That he had done it on prior occasions. And so, if the jury was to believe his testimony in that regard, then they would also have to find, I think, that the girls were prone to exaggerate things and, as I said, had a vivid imagination. So it was part of the overall trial strategy to let the jury see how prone these girls were of making things up.

Counsel also explained that he did not want to redact the statements because "[he] would rather have several exaggerations than just one." As for M. A.'s statement to Welch that Nelson told her to call him when she turned 16, counsel further explained that it would also show the jury that Nelson "[appreciated] and [understood] the problems that he would have to do what he is accused of having done with someone under the age of [16]." Counsel testified that Nelson never saw the videotape, and that he could not recall whether or not he discussed with Nelson M. A.'s exact statements. According to Nelson, counsel's strategy backfired because M. A.'s statements on the videotape neither demonstrated inconsistency nor exaggeration; they merely showed the jury that Nelson obtained drugs from children and had a lustful disposition toward minors.

In matters of trial strategy and tactics, effectiveness is not judged by hindsight or result.[23]

Even though counsel's strategy 'in this case may have backfired, strategic or tactical decisions at trial are the exclusive province of the lawyer, and decisions concerning whether to place the defendant's character in issue are

---

[23] See *Roebuck v. State*, 277 Ga. 200, 207 (10) (586 SE2d 651) (2003).

matters of strategy or tactics such as do not equate with ineffective assistance of counsel.[24]

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 2, 2010.

*H. Maddox Kilgore*, for appellant.
*Garry T. Moss, District Attorney, Sara A. Thompson, Assistant District Attorney*, for appellee.

[24] (Punctuation and footnote omitted.) *Spencer v. State*, 296 Ga. App. 828, 832-833 (2) (a) (676 SE2d 274) (2009). See also *Smallwood*, supra at 23 (4) (b).