A01A1333. MANN v. THE STATE.
(555 SE2d 527)

SMITH, Presiding Judge.
Edward Scott Mann was convicted by a jury of two counts of aggravated sodomy. The trial court granted in part and denied in

part his motion for new trial as amended, finding that as to one count, the indictment did not properly allege the offense for which Mann was convicted. The court denied the motion with respect to the remaining charge. Mann appeals. Because we agree with Mann that his trial counsel was ineffective under the standard of *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), in failing to object to improper opinion testimony that the victim was telling the truth, we reverse and remand this case for a new trial.

The only evidence concerning the allegations against Mann came through the testimony of the victim and witnesses to whom the victim made statements. The victim's stepmother testified that her six-year-old daughter told her that the victim, who was the same age as her daughter, "pulled his pants down and made me suck his pee-pee." The stepmother asked the victim what happened. He first replied, "Nothing," but he then began crying. She told him not to lie to her and asked who showed him how to behave in this manner. He answered, "My Uncle Scott." The stepmother testified that "Uncle Scott" was her brother, Scott Mann, who babysat the two children from time to time. According to the stepmother, the victim told her that Mann had tried to place his penis into the victim's bottom and that "it hurt bad." She testified that she did not seek medical attention because no penetration had been made; she stated that she asked the victim "if he put it inside, and he said no, ma'am but it hurt real bad."

Much of the victim's testimony was nonresponsive. Although he often nodded his head affirmatively or shook his head negatively when asked questions by the prosecutor, many times he refused to respond to the prosecutor's questions, particularly those involving the incidents alleged against Mann. When asked to describe what had happened, he refused to respond. He did, however, shake his head negatively when asked if he was happy being around Uncle Scott and nodded his head when asked if Uncle Scott had done anything that he did not like and whether Uncle Scott had touched him on his body. On more than one occasion, he would not respond when the prosecutor asked him to state or point to the part of his body that Mann had touched, but he once nodded affirmatively when asked if Mann touched his mouth with his penis. When asked who showed him how to do what he did to his sister, he answered, "Scott."

Mann complains about the testimony of the remaining two State's witnesses. The first witness called by the State was Laurie Love, who investigated child abuse cases for the local sheriff's department. She interviewed the victim, who told her that Mann had licked his penis and his bottom several times. The prosecutor asked this witness whether, during her investigation, she found a reason to "investigate further." The witness answered, "I believed him." No

objection was made to this testimony.

The State's second witness was Holly Shepherd, a professional counselor who worked with the victim because of the charges brought against Mann and because the victim had been "acting out." He told her that Mann had touched his penis with Mann's hands and mouth and that he had touched Mann's penis with his hands and mouth. The victim could not remember when, or how many times, these events occurred. The prosecutor asked Shepherd if she found "any evidence whatsoever that he is not telling the truth when he told you these things?" Shepherd answered, "The answer to that question is no. I believe he's telling the truth."

The trial court then called a bench conference and stated to the prosecutor that it was not proper for the State "to test another witness's credibility by this witness." Defense counsel objected to this line of questioning on the ground that witnesses cannot testify to the ultimate issue of molestation, and the trial court added that "one witness can't tell whether another witness is telling the truth." The prosecutor stated that he would not "go there again," and the trial court stated that it would sustain the objection. Although the trial court sustained the objection, the jury nevertheless heard the testimony; no instruction was given to the jury to disregard the testimony, and no other type of curative instruction was asked for or given. Mann testified, denying the allegations and denying ever acting as a babysitter for his sister's children.

1. Among other contentions, Mann argues that his trial counsel's failure to object to this testimony concerning the victim's credibility constituted ineffective assistance of counsel. Under the standard of *Strickland*, supra, 466 U. S. at 687, to prevail on an ineffectiveness claim, a defendant must show both that trial counsel's performance was deficient and that, but for this deficiency, a reasonable probability exists that the outcome of the trial would have been different. See, e.g., *Head v. Carr*, 273 Ga. 613, 615-616 (4) (544 SE2d 409) (2001). We have repeatedly held that a witness, even an expert, can never bolster the credibility of another witness "as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury. OCGA § 24-9-80." (Citations and punctuation omitted.) *Price v. State*, 220 Ga. App. 176, 177 (2) (b) (469 SE2d 333) (1996). See also *Lagana v. State*, 219 Ga. App. 220, 221 (1) (464 SE2d 625) (1995); *Roberson v. State*, 214 Ga. App. 208, 210 (4) (447 SE2d 640) (1994). Given this well-settled law, trial counsel's failure to object to this clearly objectionable testimony when it first occurred constituted deficient performance. In addition, although it appears that trial counsel lodged an objection after the second witness testified concerning the victim's credibility, as noted above, the evidence

was nevertheless admitted and heard by the jury. The jury was not instructed to disregard it. Under this circumstance, we further conclude that trial counsel's failure to move for a mistrial, or at the very least, to request curative instructions, was deficient as well.

We note that the record does not support the State's contention that defense counsel's failure to object constituted trial strategy. On motion for new trial, Mann submitted the affidavit of his trial counsel, in which counsel recited that it was not trial strategy on her part for the jury to hear either witness testify that she believed the victim was telling the truth or that she believed the victim had been molested. She further noted that even assuming that the issue of her failure to object "was not preserved for appeal, it would have been because of inexperience and not trial strategy as this was my first jury trial."

Of course, our inquiry does not end here, for we must address the second prong of the *Strickland* analysis. Mann must show a reasonable probability, or a probability that undermines confidence in the outcome of the case, that but for the deficiency, the result would have been different. *Head*, supra, 273 Ga. at 616. We conclude that testimony by the State's witnesses that they believed the victim undermined any confidence in the outcome of the trial and that Mann has satisfied the second prong of the *Strickland* analysis.

Unlike the evidence in *Odom v. State*, 243 Ga. App. 227 (531 SE2d 207) (2000),[1] in which reversal was not required even though an expert had given improper opinion testimony concerning whether the victim had been molested, the evidence against Mann was hardly overwhelming.[2] The only evidence linking Mann to the crimes alleged against him arose out of statements made by the victim, whose credibility was very much in issue during the trial and whose testimony was far from compelling. The victim's statements varied in material respects. He told his stepmother that Mann had tried to place his penis in his bottom and that it hurt. But he told Love that Mann had placed Mann's mouth on his penis and had licked his anus. His allegations to Shepherd again differed, for he reported to this witness that he had touched Mann's penis with his hands and mouth and that Mann had done the same to him. On direct examination by the State, Shepherd testified that the victim did not state that Mann had placed his mouth on his anus.

---

[1] The evidence in *Odom* consisted of two videotapes of the victim identifying Odom the defendant as the perpetrator, "strong physical evidence of sexual abuse," and "three outcry witnesses who demonstrated the consistency of the victim's outcry," as well as "two mental health experts who each offered proper, competent testimony that the victim's outcry and behavior are consistent with that of children who have been sexually abused." Id. at 231 (1) (d) (iii).

[2] The State appears to acknowledge as much in its appellate brief.

In addition, the victim's allegations against Mann arose after the victim found himself in trouble, and the victim acknowledged that he sometimes blamed wrongdoing on others. We further note that the stepmother testified that the victim had stolen "repeatedly." Mann's mother, who was also the mother of the victim's stepmother, testified as well. She stated that the stepmother had expressed concern about the victim's truthfulness on three occasions before trial and that the victim had lied to her about other people having abused him; he had accused his father and stepmother of not feeding him. On cross-examination, the prosecutor asked this witness whether she believed it happened, and she answered, "I don't." The prosecutor asked this witness whether she believed anything the victim said, and she replied that she did not. The State's case depended on the victim's credibility. Despite the impropriety of this latter witness's testimony concerning her stepgrandson's credibility, under the circumstances of this case, in which *two* different trained professionals testified that they believed the victim, we cannot conclude that defense counsel's failure to properly object and have this testimony removed from the jury's consideration had no effect on the verdict. Compare *Godbey v. State*, 241 Ga. App. 529 (526 SE2d 415) (1999) (physical precedent only) (although witness improperly bolstered witness's credibility, denial of mistrial motion upheld where proper curative instructions twice given to jury). Reversal is required.

2. We need not reach Mann's remaining enumerations, as they are not likely to recur at retrial.

*Judgment reversed. Barnes and Phipps, JJ., concur.*

DECIDED OCTOBER 17, 2001.

*Mau & Kondritzer, Kenneth D. Kondritzer*, for appellant.
*Michael H. Crawford, District Attorney, E. Jay McCollum, Assistant District Attorney*, for appellee.