295 Ga. 4
FINAL COPY

S13Y1860.  IN THE MATTER OF DENISE L. MAJETTE.

PER CURIAM.

This disciplinary matter is before the Court on the Report and Recommendation of the Review Panel, concluding that Denise L. Majette (State Bar No. 746843) committed multiple violations of the Rules of Professional Conduct in manufacturing time sheets and invoices in connection with litigation involving a trust.  Although the Review Panel recommends a three-year suspension with conditions for reinstatement, the State Bar continues to seek disbarment, as recommended by the special master, Harold T. Daniel, Jr. Because the record fully supports the conclusion of the special master, we agree that disbarment is the proper sanction.

Following the filing of a formal complaint and a lengthy evidentiary hearing, the special master concluded that Majette violated Rules 1.5 (a) (1), 3.3 (a) (1), 7.1 (a) (1), 8.1 (a), and 8.4 (a) (4) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d).  The Review Panel accepted the special master's findings and conclusions, but also determined that the evidence showed that Majette violated Rule 1.16 (d), as well as additional violations of Rules 1.5

(a) (1), 8.1 (a), and 8.4 (a) (4). The maximum sanction for a violation of any of these Rules, except Rules 1.5 (a) (1) and 1.16 (d), is disbarment.

The facts, as found by the special master and Review Panel, and supported by the evidence, show that Majette, who was admitted to the Bar in 1983 and had a distinguished career, was having financial difficulties in 2008 while working part-time as a lawyer and part-time as a real estate agent. As a result, she sought a loan from a lawyer with whom she was acquainted. The lawyer declined to loan Majette money, but offered to associate her in a litigation matter in which the lawyer and an associate represented two clients in litigation involving a trust of which the clients were beneficiaries. Majette accepted the offer; the lead lawyer and Majette agreed that Majette's fee would be $200 per hour. The lawyer paid Majette $2,000 as a retainer on September 2, 2009, and additional sums totaling $22,500 through March 2010. The lawyer considered these sums to be an advance to be applied against fees earned. Majette did not keep contemporaneous time records, but reconstructed her time sheets and invoices from memory and from notes on her calendar or computer. She prepared a time sheet in November 2009 reflecting 46 hours of work between August and November 20, 2009; she prepared a one-line time sheet in January

2

2010, reflecting 50 hours of work between December 1, 2009, and January 24, 2010.

Hearings were held in the litigation over three days in March and April 2010; Majette participated in the hearings with the lead lawyer and the other associated lawyer. The trial judge indicated that both sides could seek attorney fees, and Majette prepared a motion for fees for the clients. The motion, which Majette did not provide to the lead lawyer for review before filing, stated that Majette's billing rate was $500 per hour and that she had spent 260 hours on the case as of April 6, 2010. The motion stated that the billing rate for the lead lawyer was $300 and that he had expended 140.9 hours on the case. The lead lawyer had authorized Majette to use $300 per hour for himself and $260 for Majette in connection with the motion, and he had planned to inform the trial judge that his client had been billed at a lower rate. However, Majette did not give the lead lawyer a draft of the motion before she filed it. The lead lawyer was stunned by the filing and eventually caused it to be withdrawn.

A few days after the last hearing, Majette asked the lead lawyer for payment of $38,000, but did not present a bill or time sheet, and he responded that she would have to seek payment directly from the clients. Majette called

one of the clients on April 13, 2010, at 10:30 p.m. and demanded payment of $39,400 in fees by the next day, telling the client that she was in a bind and needed the money right away. The client asked Majette if she had submitted a bill to the lead lawyer, and Majette misrepresented to the client that she had. The client asked that a copy of the bill be sent to her and agreed to wire transfer $15,000 to Majette the following day, but stated that she would pay the balance after reviewing and approving the bill. Although the client sent the wire transfer as promised, Majette did not send a bill until May 10, 2010, and when she did send the bill, it did not contain details of work done or time attributable to any specific work, but instead simply listed 170 hours as the number of hours allegedly worked. The following day the client requested that Majette provide a proper invoice, which Majette sent on May 11, 2010. That invoice summarized, in two brief paragraphs, the 170 hours from February 2010 through April 6, 2010. The client asked a friend to help her obtain more information from Majette about the invoice. The friend asked Majette for a more detailed bill that also showed credit for the fees already paid, but Majette refused to deal with the client's intermediary.

At the lead lawyer's request, Majette prepared a new, detailed billing

4

statement dated May 22, 2010. The statement showed 180 hours of work at $200 an hour, plus $232.60 in costs, most of which was for mileage from Majette's house to the lead lawyer's office and to the courthouse. Majette informed the client that the additional 10 hours over the earlier statement represented hours spent in preparing the statement. The statement also showed a credit of $15,000 and amount due of $21,262.60. The client scrutinized the bill and sent the lead lawyer the bill with annotations disputing the bill, noting numerous problems with the bill, including excessive time charged for reading e-mails (forty hours from February 1 to March 24); billing for a telephone conference that did not take place; twelve hours for attending a Continuing Legal Education ("CLE") seminar on appellate practice; travel time to and from the lead lawyer's office on six days; twelve hours for each hearing date; and billing for a social outing. The client concluded that no further payment was due and stated that Majette should repay some of the funds previously advanced.

On June 30, 2010, Majette sent the statement to the lead lawyer and demanded payment within a week or she would take legal action. The lead lawyer responded that he considered her billing for 180 hours to be excessive because he was lead counsel and had spent more time on the case than anyone

5

and because the clients had raised numerous questions regarding her representations of the work performed and the time charged. In August 2010, the lead lawyer sent a letter to Majette detailing the specific challenges raised by the clients.

In response, Majette made a series of filings in the trust litigation in September 2010 seeking payment, including a notice of withdrawal, an attorney's lien, and an action for breach of contract. In November 2010 Majette filed a motion to foreclose the lien, and in January 2011 Majette filed a motion to intervene, seeking to satisfy the lien. The lead lawyer filed pleadings opposing Majette's filings on behalf of the clients. The trial court ultimately dismissed the contract action and the motion to foreclose the lien.

The client filed a grievance against Majette with the Bar. Majette denied she had been paid a $24,500 retainer, stating that the first $2,000 payment was for a personal matter and that the remaining $22,500 was for earned fees. After being shown a copy of the check for $2,000, which showed that it was a retainer for the trust litigation, Majette claimed that her failure to include it was an honest mistake and then recalculated the balance due. Throughout the disciplinary process, Majette never conceded any possibility of error in the time

6

sheets or billing statements, showed no remorse, and steadfastly maintained entitlement to additional payments.

The special master found that by submitting wholly unsupported and materially misleading time sheets and invoices to her client, misrepresenting her hours and fees to the court, and misrepresenting in the disciplinary process the payments received, Majette committed several violations of the Rules of Professional Conduct. The special master found as a mitigating factor that Majette has no prior disciplinary record, but found as aggravating factors that there were multiple offenses, submission of false statements or evidence in the trust litigation and the disciplinary process, refusal to acknowledge the wrongful nature of her conduct, and substantial experience in the practice of law. The special master determined that the proper sanction was disbarment.

Majette sought review by the Review Panel, and both she and the State Bar filed exceptions regarding the special master's findings. The Review Panel adopted the special master's findings, but concluded there were additional findings.

The Panel rejected Majette's arguments that the special master had erred in failing to require the State Bar to provide her with a free transcript of the

evidentiary hearing, see Bar Rule 4-213 (b); by allowing a witness to bring a dog to the hearing; and in allowing Bar counsel to question Majette about persons she may have contacted about a loan. With regard to her other exceptions, the Review Panel determined that the special master's conclusions regarding Majette's violations of the Rules were sound and supported by the evidence.

The State Bar's exceptions concerned the special master's failure to find a violation regarding Majette's charge for attending the CLE seminar and for Majette's failure to refund unearned fees. The Review Panel made additional findings that Majette and the lead lawyer attended a CLE seminar on February 26, 2010, because they had to complete their CLE hours for 2009 by March 31, 2010. Majette's charge for attending the seminar did not appear on any of the invoices prepared before May 22, 2010. During the evidentiary hearing, Majette stated that the lead lawyer had said that the client would take care of the cost of the seminar and Majette assumed that it would include the time attending the seminar. Majette further stated that she believed the seminar would better prepare her for representing the client. Majette testified that the charge for the CLE attendance was an issue to be resolved; she has never removed the charge.

The lead lawyer testified that the client did not authorize attendance at the seminar at her expense and that he never told Majette that the client would pay for their CLE attendance. He further testified that the CLE seminar on appellate practice had nothing to do with the trust litigation and was chosen because of the need to complete CLE requirements. He paid for the CLE and did not charge the client for his attendance. Based on these additional findings and its determination that Majette failed to account for and return unearned fees, the Review Panel concluded that, in addition to the violations found by the special master, Majette violated Rule 1.16 (d), as well as additional violations of Rules 1.5 (a) (1), 8.1 (a), and 8.4 (a) (4).

The Review Panel considered the full record, and while stating that the recommendation of disbarment was "certainly justified given the very serious facts in this case," it nevertheless recommended a three-year suspension with conditions upon reinstatement, solely because this was Majette's only disciplinary proceeding "in an otherwise distinguished career." Majette filed exceptions to the Review Panel's report.

1. Majette first contends that she should have been provided a copy of the transcript. However, we find that the special master did not abuse his discretion

in this regard. Bar Rule 4-213 (b) provides that "[u]pon a showing of necessity and a showing of financial inability by the Respondent to pay for the transcription, the Special Master shall order the State Bar of Georgia to provide the transcript." However, Majette failed to make this showing, as the only attempt to show financial inability was her utilization of this Court's form for a pauper's affidavit. Where the record reflects that Majette has long been gainfully employed and is capable of gainful employment, the simple submission of the Court's form affidavit is insufficient.

2. Because Majette failed to raise an issue at the evidentiary hearing regarding the presence of the client's dog at the hearing, we agree with the Review Panel that she may not raise the issue for the first time long after the hearing has concluded.

3. Majette excepts to the findings of fact and conclusions of law regarding each violation found by the Review Panel. However, a review of the record shows ample support for the special master and Review Panel's factual findings and for the conclusion that Majette committed multiple violations of the Rules of Professional Conduct by submitting wholly unsupported and materially misleading time sheets and invoices to her client and misrepresenting her hours

10

and fees to a court. See Douglas R. Richmond, <u>For a Few Dollars More: The Perplexing Problems of Unethical Billing Practices by Lawyers</u>, 60 S.C. L. Rev. 63, 64, n. 8 (2008) (collecting cases imposing disciplinary sanctions, including disbarment, on lawyers for fraudulent or abusive billing practices). Contrary to Majette's contentions, the misconduct exhibited in this case cannot be characterized as a fee dispute. Additionally, despite the consistent and well-supported findings that Majette committed numerous violations of multiple disciplinary rules, Majette has failed to express any remorse. See <u>In the Matter of Friedman</u>, 270 Ga. 5, 6 (505 SE2d 727) (1998) (noting this Court's "little tolerance for a lawyer who lies during disciplinary proceedings or engages in conduct involving dishonesty, fraud, deceit or misrepresentation").

Accordingly, we conclude that the special master's recommendation of disbarment, reached after careful and thorough consideration of live testimony and documentary evidence, is the proper sanction in this matter. See In the Matter of Cleaver-Bascombe, 290 Ga. 78 (717 SE2d 478) (2011) (disbarment as reciprocal discipline for submission of fraudulent pay voucher and giving of sworn testimony defending the voucher and insisting it fairly reflected services rendered). Therefore, it is hereby ordered that the name of Denise L. Majette be removed from the rolls of persons authorized to practice law in the State of

Georgia. Majette is reminded of her duties pursuant to Bar Rule 4-219 (c).

Disbarred. All the Justices concur, except Thompson, C. J., and Melton, J., who dissent. Benham, J., not participating.

MELTON, Justice, dissenting.

While I agree that the conduct involved in this case merits a severe punishment, I believe that a prolonged suspension with conditions for reinstatement, rather than disbarment, would be a more appropriate sanction. As the Review Panel concluded in this case, the respondent's over thirty years of distinguished service to the bench and bar with no disciplinary problems whatsoever should serve as a significant mitigating factor with respect to the punishment imposed here. See, e.g., In the Matter of Shelfer, 278 Ga. 55, 56 (597 SE2d 365) (2004) (After considering several mitigating factors, including "the absence of a prior disciplinary record during [the attorney's] three and a half decades of practice," the Court imposed a two-year suspension for an attorney who stole over $100,000 from his client over two years). Indeed, with

12

regard to unearned fees and misleading billing practices such as those involved in this case, reimbursement to the client for any unearned fees and, at the very least, the additional requirements recommended by the Review Panel (i.e., that the respondent successfully participate in the State Bar's Law Practice Management Program and complete six hours of continuing legal education on legal ethics at her own expense) would certainly seem to be appropriate conditions to impose for the respondent to be reinstated following an extensive suspension from the practice of law. See In the Matter of Champion, 275 Ga. 140 (562 SE2d 179) (2002) (attorney who converted client funds to her own use and initially lied to State Bar about doing so given 12-month suspension with conditions for reinstatement (including condition to attend State Bar Ethics School at her own expense) where she had no prior disciplinary history and had reimbursed client). In any event, because, in my view, the ultimate sanction of disbarment does not properly take into account the respondent's otherwise distinguished career as a significant mitigating factor, I must respectfully dissent.

I am authorized to state that Chief Justice Thompson joins in this dissent.

Decided March 28, 2014.

Disbarment.

Paula J. Frederick, General Counsel State Bar, Jonathan W. Hewett, Assistant General Counsel State Bar, for State Bar of Georgia.