**THIRD DIVISION**
**ELLINGTON, P. J.,**
**MCFADDEN and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 24, 2016**

# In the Court of Appeals of Georgia

A15A1834. BLACKMON v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Willie Blackmon was convicted of two counts of rape, two counts of aggravated child molestation, and two counts of child molestation against minor child S. L. Blackmon appeals, asserting that his trial counsel was ineffective in failing to object to inadmissible hearsay that bolstered S. L.'s credibility, in failing to object to improper bolstering of S. L.'s credibility by witnesses opining as to her truthfulness, and in failing to object to an improper jury charge on prior consistent statements. We agree that trial counsel's performance was both deficient and prejudicial. Accordingly, we reverse the convictions, but find that Blackmon may be retried on the charges since there was sufficient evidence to support the convictions. See *Williams v. State*, 268 Ga. 488, 489 (491 SE2d 377) (1997) (retrial is not

prohibited where reversal is due to trial error rather than the sufficiency of the evidence).

1. *Sufficiency of the evidence.*

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Owens v. State*, 334 Ga. App. 203 (778 SE2d 830) (2015).

So viewed, the evidence shows that Blackmon was the boyfriend of the mother of S. L. He began living with the mother and her three children, including S. L., in 2003 or 2004. In February 2008, when S. L. was 14 years old, she called her mother from school because she had stomach pains. The mother called Blackmon and asked him to pick her up from school. Blackmon picked up S. L. from school and took her to the doctor. S. L. was diagnosed with and given medications for a stomach ulcer and a yeast infection.

When they arrived home, Blackmon told the mother that the doctor had said that S. L. was sexually active. The mother then questioned S. L., who said that she was having sex with a boy from the neighborhood. Approximately an hour later, after the mother had said that she would have to talk to the boy's parents, S. L. told her mother that she had lied about the boy. The mother sent S. L. to her room and told her that they would talk about it later.

Several days later, S. L.'s aunt questioned S. L. about the yeast infection medication, and S. L. then told her aunt that Blackmon had been having vaginal and oral sex with her since she was approximately 12 years old. The aunt called S. L.'s mother and told her what S. L. had said. S. L. subsequently told her mother that Blackmon had sexually abused her. S. L. described discoloration on Blackmon's thighs that the mother testified was only visible when he was naked; and S. L. said she had once bitten Blackmon's penis, which was consistent with a mark the mother had seen on his penis. The police were contacted, and officers came to the mother's house, where they interviewed both S. L. and Blackmon, who denied any sexual abuse. The police seized a bedspread from S. L.'s bed for DNA testing, but the crime laboratory test results were negative for the presence of DNA. A doctor's physical

examination of S. L. conducted approximately three weeks after the last alleged incident of abuse did not reveal any injuries or other physical evidence.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that S. L.'s "testimony standing alone, [describing the alleged sexual abuse by Blackmon, ] was sufficient to support the verdict, and issues of consistency and credibility were for the jury to decide." *Jackson v. State*, 334 Ga. App. 469, 473 (2) (779 SE2d 700) (2015) (citations omitted). See also *Ruffin v. State*, 333 Ga. App. 793 (1) (777 SE2d 262) (2015) ("victim's testimony, standing alone, would have been sufficient to authorize a verdict of guilty").

2. *Ineffective assistance of counsel.*

Blackmon contends that his trial counsel was ineffective in failing to object to inadmissible hearsay testimony from multiple witnesses recounting out-of-court statements made by S. L., and in failing to object to the trial court's jury charge on prior consistent statements. To prevail on these claims, Blackmon must show both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different. See *McDuffie v. State*, 298 Ga. 112,

115 (2) (779 SE2d 620) (2015); *Long v. State*, 287 Ga. 886, 891 (4) (700 SE2d 399) (2010).Blackmon has made both of these showings.

a. *Failure to object to inadmissible hearsay.*

At the trial, the state presented six witnesses who testified about out-of-court statements made by S. L. when she was 14 years old describing the alleged sexual abuse by Blackmon. The first two witnesses presented by the state were S. L.'s aunt and mother, both of whom testified, among other things, about statements that S. L. had made alleging that Blackmon had sexually abused her by inserting his penis into her mouth and vagina. S. L. herself then testified, after which the state introduced testimony from four witnesses involved in the investigation who recounted statements that S. L. had made to them describing the alleged acts of sexual abuse by Blackmon. A police sergeant who interviewed S. L. testified about S. L.'s statements that Blackmon had forced her to perform oral sex and had engaged in sexual intercourse with her. A doctor testified that S. L. said Blackmon had forced her to have sex, and the doctor recited other statements made by S. L. describing the alleged abuse. A forensic interviewer testified about S. L.'s statements alleging sexual abuse by Blackmon. And the director of forensic services for the district attorney's office also gave testimony recounting out-of-court statements made to her by S. L.

5

"Hearsay is testimony in court . . . of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Bates v. State*, 322 Ga. App. 319, 327 (5) (744 SE2d 841) (2013) (citation, punctuation, and footnote omitted). Here, Blackmon's trial counsel failed to raise hearsay objections to any of the six witnesses' testimony about the out-of-court statements made by S. L. At the motion for new trial hearing, trial counsel admitted that there was no strategic reason why she failed to raise hearsay objections to such testimony. Instead, she acknowledged her mistakes, attributing her failure to object to her being "a bonehead," "worn out," and "overwhelmed."

We note that in denying Blackmon's ineffective assistance claim on this ground, the trial court did not find that the out-of-court statements by S. L. were admissible under the Child Hearsay Statute. Presumably, the court made no such finding because, as Blackmon points out in his appellate brief, without any refutation by the state, the Child Hearsay Statute in effect at the time of his 2011 trial, former OCGA § 24-3-16, provided an exception to hearsay for a "statement made by a child *under the age of 14 years* describing any act of sexual contact or physical abuse performed with or on the child[.]" (Emphasis supplied.) See *Cobb v. Hart*, 295 Ga.

6

89 n. 1 (757 SE2d 840) (2014) (noting that "[e]ffective January 2, 2013, the law governing child hearsay is now codified at OCGA § 24-8-820."). "The clear wording of the statute indicates that the age of the child at the time the statements were made is determinative of their admissibility under the statute. [Cit.]" *Darden v. State*, 206 Ga. App. 400, 401 (1) (425 SE2d 409) (1992) (physical precedent). Thus, because S. L. was not under 14 years old at the time she made the statements, they were not admissible under the Child Hearsay Statute. See *Currington v. State*, 270 Ga. App. 381, 387 (4) (606 SE2d 619) (2004) (victim "was not a child under the age of 14 when she made the statement at issue, so the Child Hearsay Statute was inapplicable."). See also *Cobb*, supra at 90-91 (2).

However, the trial court found, and the state argues on appeal, that Blackmon's counsel was not ineffective in failing to object to the testimony about S. L.'s out-of-court statements because such testimony was admissible as prior consistent statements. Indeed,

> [s]ince 1985, Georgia law has allowed certain prior consistent statements of a witness to be admitted as substantive evidence. See *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). In 1998, [the Georgia Supreme] Court clarified that a witness's prior consistent statement is 'admissible only where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination.' *Woodard*

7

*v. State*, 269 Ga. 317, 320 (496 SE2d 896) (1998), overruled on other grounds by *Bunn v. State*, 291 Ga. 183 (728 SE2d 569) (2012).

*Cowart v. State*, 294 Ga. 333, 339 (4) (a) (751 SE2d 399) (2013).

In denying Blackmon's motion for a new trial, the trial court cited this standard and found that the veracity of S. L.'s testimony had been placed in issue during her cross-examination, thereby rendering her prior consistent statements admissible as substantive evidence. The trial court found: "The statements were introduced *after* S. L.'s credibility was placed into question and as such were not inadmissible hearsay. . . . In response, the [s]tate was allowed to introduce evidence of her prior consistent statements." (Emphasis supplied.) But the rule is not so broad.

> [T]he [trial court] overlook[ed] what [the Georgia Supreme] Court said in *Woodard*, and has repeated many times since, about *how* a witness's veracity must be challenged to allow the introduction of his prior consistent statement: A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination. As stated by a well-respected commentator: "Thus, to rebut a charge that a witness is motivated or has been influenced to testify falsely or that his testimony is a recent fabrication, evidence is admissible that he told the same story *before* the motive or influence came into existence or *before* the time of the alleged recent fabrication. In those circumstances, the prior consistent statement is defined as not hearsay and thus is admitted into evidence." Unless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to

8

bolster the witnesss credibility in the eyes of the jury. *Woodard*, 269 Ga. at 320. . . . Put another way, to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must predate the alleged fabrication, influence, or motive. If the statement was made later, proof of the statement does not assist the jury to evaluate the witness's testimony because the reliability of the statement is subject to the same doubt as the trial testimony.

*Cowart*, supra at 339-340 (4) (a) (citations and punctuation omitted; emphasis in original).

Here, the trial court erroneously found that all of the testimony about S. L.'s out-of-court statements was introduced by the state *after* S. L.'s credibility had been placed in issue. The trial court overlooked the fact that the state's first two witnesses, the aunt and mother, both testified about S. L.'s out-of-court statements before S. L. herself was even called to testify. Thus, the testimony of the aunt and the mother could not have been introduced by the state to rebut a charge of recent fabrication, improper influence or improper motive raised during cross-examination of S. L.

Since prior consistent statements are admissible only to rebut a charge that a witness is motivated or has been influenced to testify falsely or that her testimony is a recent fabrication, and the veracity of [S. L. had not yet been] affirmatively placed in issue, the [aunt and mother's testimony about her] prior consistent statements [was] pure hearsay and inadmissible to corroborate [S. L.'s subsequent testimony] or bolster [her] credibility before the jury.

9

*Baugh v. State*, 276 Ga. 736, 739 (2) (585 SE2d 616) (2003) (citations and punctuation omitted).

Moreover, contrary to the trial court's finding, during the cross-examination of S. L., trial counsel for Blackmon did not raise an affirmative charge of recent fabrication, improper influence, or improper motive. See *Cowart*, supra; *Baugh*, supra at 738 (2). Indeed, after the cross-examination ended, the state did not identify or claim any affirmative charges of recent fabrication, improper influence, or improper motive that it wanted to refute on re-direct examination of S. L. by introducing her prior consistent statements. Rather, after S. L. left the witness stand, the state simply elicited the improper hearsay testimony about S. L.'s prior out-of-court statements from four other witnesses without any objection from Blackmon's counsel. Compare *Cowart*, supra at 339 (4) (when cross-examination of witness ended, state sought to introduce his prior statement on re-direct, but defendants objected on ground that proffer was not an admissible prior consistent statement).

While it did not do so at trial, on appeal the state identifies one charge of fabrication purportedly raised by Blackmon's counsel; the state claims that during her opening statement, Blackmon's counsel argued that S. L. had "fabricated the entire molestation to cover up a consensual sexual relationship she was having with

10

someone else." However, the state's claim disregards the legal requirement that to authorize admission of a prior consistent statement, an affirmative charge of recent fabrication must be raised during cross-examination, not during opening statements. *Cowart*, supra. Furthermore, the state has not cited any part of the transcript at which this argument was purportedly made by Blackmon's counsel, and our review of trial counsel's entire opening statement has not revealed any such argument. Although trial counsel did refer to S. L.'s initial statement to her mother that she was having sex with a boy in the neighborhood and S. L.'s subsequent retraction of that statement, counsel never made any affirmative claim that S. L. had recently fabricated the allegations of abuse by Blackmon to cover up another sexual relationship.

Moreover, even if we assume for the sake of argument that Blackmon's counsel had in fact raised such a charge of fabrication, it was not a *recent* fabrication. The purported "motive to fabricate that [the state] allege[s S. L. had] when [s]he testified at trial - [to cover up a another sexual relationship] - arose *no later* than the time [S. L.] made [her initial outcries to her aunt and mother]." *Cowart*, supra at 341 (4) (a) (emphasis supplied). In fact, such a purported motive to fabricate likely arose prior to those initial outcries when the mother announced to S. L. that she would speak to the parents of the boy whom S. L. had initially identified as the person with whom she

11

was having a sexual relationship, which preceded S. L.'s outcry against Blackmon. Indeed, the testimony given by S. L. at trial is the same story that she told her aunt and mother during her initial outcry, and thus it did not predate the alleged improper motive to cover up a sexual relationship with another person. Because S. L. did not tell the same story *before* the alleged motive came into existence, "the trial court erred in admitting [testimony of her out-of-court] statement[s], which did not qualify as . . . prior consistent statement[s] and [were] instead [pure hearsay] improperly used to bolster the witness's credibility." *Cowart*, supra at 406 (4) (a) (footnote omitted). Compare *Cobb v. Hart*, supra at 91-92 (2) (prior consistent statement admissible after veracity of witness challenged on cross-examination by defense counsel questioning whether just before trial the witness had met and colluded with another witness to make their trial testimonies consistent with each other).

As there was no strategic reason not to object, it follows that trial counsel's failure to object to any of the improper hearsay testimony constituted deficient performance. See *Laye v. State*, 312 Ga. App. 862, 872 (5) (720 SE2d 233) (2011) (lack of objection to hearsay was deficient performance). But our inquiry does not end there because we must also determine if Blackmon was prejudiced such that there is a reasonable probability that, but for counsel's deficient performance, the result of

the trial would have been different. *Mann v. State*, 252 Ga. App. 70, 73 (1) (555 SE2d 527) (2001). The evidence against Blackmon was not overwhelming - there was no physical evidence and "[t]he only evidence linking [Blackmon] to the crimes alleged against him arose out of the statements made by [S. L.]" Id. Consequently, "[t]he [s]tate's case depended on [S. L.'s] credibility." Id. at 74 (1). And as explained above, that credibility was improperly bolstered by the erroneous admission of hearsay testimony from multiple witnesses repeating S. L.'s prior statements about the alleged abuse. "[W]e cannot conclude that defense counsel's failure to properly object and have this testimony removed from the jury's consideration had no effect on the verdict. [Cit.]" Id. Accordingly, the judgment of conviction must be reversed and Blackmon is entitled to a new trial. See *Walker v. State*, 296 Ga. App. 531, 535 (1) (b) (675 SE2d 270) (2009) (child molestation conviction reversed where there was no evidence of crime other than victim's testimony and trial counsel failed to object to testimony improperly bolstering victim's credibility); *Orr v. State*, 262 Ga. App. 125, 129 (3) (584 SE2d 720) (2003) (ineffective assistance of counsel mandated a new trial where there was no physical evidence, victim's testimony was the only evidence against defendant, and counsel failed to object to testimony bolstering victim's credibility).

b. *Failure to object to testimony opining as to S. L.'s truthfulness.*

Blackmon claims that his trial counsel was also ineffective in failing to object to testimony from two witnesses, S. L.'s mother and the director of forensic services for the district attorney's office, opining that S. L. was telling the truth. We agree with Blackmon in regard to the mother's testimony, but not as to the testimony of the director of forensic services.

> A witness' credibility may not be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth. Credibility of a witness is a matter solely within the province of the jury. It is not improper bolstering, however, for a witness to express an opinion as to whether objective evidence in the case is consistent with the victim's story.

*Roberts v. State*, 322 Ga. App. 659, 665 (3) (d) (745 SE2d 850) (2013) (citation omitted).

Here, the director of forensic services did not give an opinion as to the truthfulness of S. L.'s allegations, but instead merely testified that objective evidence in the case was consistent with S. L.'s story. Thus, the lack of an objection to such testimony was not deficient performance since "it is not ineffective assistance for trial counsel to fail to make a meritless objection." Id. (citations omitted).

14

However, S. L.'s mother went beyond merely testifying about consistency between the objective evidence and S. L.'s story, and offered opinions as to S. L.'s truthfulness. In explaining why she questioned S. L. about the appearance of Blackmon's "private area," the mother testified: "Because I wanted to see . . . was she telling the truth. And from what she described, she was telling the truth." The mother also testified that initially she did not know whether to believe S. L.'s allegations, but "[i]n my heart now, I truly believe her."

Counsel's failure to object to the mother's improper bolstering testimony opining as to S. L.'s truthfulness constituted deficient performance, and given the lack of evidence against Blackmon beyond that arising out of S. L's statements, "we cannot conclude that but for counsel's deficient performance, the outcome of this trial . . . would not have been different." *Walker*, supra. Furthermore, "[w]hen considering the prejudice prong for multiple claims of ineffective assistance of counsel, we look to whether the cumulative effect of counsel's alleged errors leads to a reasonable probability that the outcome of the trial would have been different." *Dority v. State*, ___ Ga. App. ___ (4) (i) (Case No. A15A1192, decided November 20, 2015) (citation and punctuation omitted). In this case, Blackmon was prejudiced by the cumulative effect of counsel's errors in failing to object to the mother's improper opining as to

15

S. L.'s credibility and, as discussed above, in failing to object to multiple instances of hearsay that also improperly bolstered the credibility of S. L.

c. *Failure to object to jury charge on prior consistent statements.*

The trial court charged the jurors on prior consistent statements, instructing them that they were authorized to consider such statements "as substantive evidence." As explained above, there were no properly admitted prior consistent statements in this case. Consequently, there was no basis for the trial court to instruct the jurors on prior consistent statements since a jury charge should be "adjusted to the evidence. [Cit.]" *State v. Braddy*, 254 Ga. 366, 368 (330 SE2d 338) (1985). See also *Stephens v. State*, 289 Ga. 758, 759 (1) (a) (716 SE2d 154) (2011) (instruction on prior consistent statements should only be given where the circumstances of an unusual case suggest that the jury may have the mistaken impression that it cannot consider a prior consistent statement as substantive evidence).

Trial counsel's failure to object to the unwarranted prior consistent statements jury charge was deficient performance, and the cumulative effect of this error, combined with counsel's errors in failing to object to the hearsay testimony about S. L.'s prior statements, clearly prejudiced Blackmon since the charge authorized the jury to consider the improperly admitted hearsay testimony as substantive evidence

16

against him. Under these circumstances, there is a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different, and thus "the trial court erred by denying [Blackmon's] motion . . . for new trial based upon the ineffectiveness of his defense counsel for failing to object to the charge on [prior consistent statements]." *Dodd v. State*, 324 Ga. App. 827, 835 (2) (752 SE2d 29) (2013).

3. *Jury charge on prior consistent statements*.

In a separate enumeration, Blackmon contends that the trial court erred by giving the jury charge on prior consistent statements. As noted above, trial counsel failed to object to the charge even though there were no admissible prior consistent statements to support it. Because this issue was not preserved for appellate review by an objection at trial, it is subject to review for plain error. *Thomas v. State*, 297 Ga. 750, 752 (2) (778 SE2d 168) (2015). See also OCGA § 17-8-58 (b). But because of our holdings above reversing the convictions due to ineffective assistance of counsel, we need not address this issue.

*Judgment reversed. Rickman, J., concurs specially in Divisions 1 and 2(a) and in the judgment only in Divisions 2(b), 2(c) and 3; Ellington, P. J., concurs in the judgment only*.

17

A15A1834.  BLACKMON v. THE STATE

RICKMAN, Judge, concurring specially.

I have reviewed the record in this matter, and concur that reversal is required for the reasons set forth in Division 2 (a) of the majority opinion. I write separately to express a deep and genuine concern that has echoed repeatedly through this Court's criminal jurisprudence.

To be sure, prosecutors and criminal defense attorneys have difficult jobs. The lives of victims and their families, as well as the lives of defendants and their families, hang in the balance with each and every serious criminal case. The stakes in a criminal courtroom are as high as can be found anywhere in our justice system. It is completely understandable, given the time and emotional expenditure associated with the arduous task of taking another human being's liberty in one's hands, that deficiencies in performance due to exhaustion and burn-out can result.

Nevertheless, there are three obligations that continue to be ignored by some practicing members of the Georgia bar. First, there is an obligation for the lawyer who feels burned out and ineffective to recognize it and either withdraw from a case or seek other assistance until the lawyer is prepared to perform competently. See Georgia Rules of Professional Conduct, Rule 1.1 ("A lawyer shall provide competent representation to a client. Competent representation . . . means that a lawyer shall not handle a matter which the lawyer knows or should know to be beyond the lawyer's level of competence without associating another lawyer who the original lawyer reasonably believes to be competent to handle the matter in question."). Second, there is an obligation on the part of any lawyer who may be responsible for supervising a struggling lawyer to recognize when that lawyer needs assistance and/or to be replaced. See Georgia Rules of Professional Conduct, Rule 5.1 (b) ("A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Georgia Rules of Professional Conduct."). Third, there is an obligation on our profession to keep an ineffective attorney out of the courtroom until he or she is fully prepared to provide competent representation. See Georgia Rules of Professional Conduct, Preamble (11) ("Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer

should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.").

In a number of cases that have come before this Court, none of the foregoing obligations appeared to have been taken as seriously as they should have been. See, e.g., *Nejad v. State*, 296 Ga. App. 163, 170 (674 SE2d 60) (2009) (Smith, J., concurring specially) (commenting that "[t]he developing trend of emphatically and even eagerly testifying to one's own incompetence or misconduct is dangerous to the administration of justice, particularly if it is allowed to continue without any consequences for the testifying trial counsel"); see also *Carrie v. State,* 298 Ga. App. 55, 62 n.23 (679 SE2d 30) (2009) (recognizing that "[w]hether counsel's assessment of his performance was an honest admission of incompetency or a disingenuous attempt to secure a new trial for his former client is not for our determination," but noting that it is a perversion of justice to allow such instances to continue without any consequences to trial counsel).

In 2009, we noted that instances of trial counsel claiming his or her own ineffectiveness without consequence was a "worrisome trend" for this Court. See *Nejad,* 296 Ga. App. at 169. This particular case does not involve trial counsel

3

opining as to her own effectiveness, and rightfully so. See *Hartsfield v. State*, 294 Ga. 883, 888 (757 SE2d 90) (2014). However, we continue to witness admissions that point to ineffectiveness and the resulting findings, with apparently no response or consequence. A consequence need not even be a *punitive* consequence; but rather *some* meaningful attempt to keep ineffective attorneys out of the criminal courtroom.